DOERING and another, Respondents, vs. KNUDSEN and another, Appellants.

*April 8—May 6, 1952.*

For the appellants there was a brief by *Smith, Okoneski, Puchner & Tinkham* of Wausau, and oral argument by *Richard P. Tinkham.*

For the respondents there was a brief by *Schmitt, Eckhardt & Gullickson* of Merrill, and oral argument by *A. G. Eckhardt.*

GEHL, J.   Defendants contend that the award is excessive, the result, in part at least, of improper remarks made by plaintiffs' counsel in his argument to the jury. They may not complain on that account for they made no objection to counsel's argument as it was being made.

"Such course of objecting to improper remarks so that an immediate ruling by the court and the admonishing of counsel may avoid injurious consequences therefrom has been the procedure in the cases heretofore passing upon such situations. It is only in cases where the trial court improperly refused to sustain such objections, or where counsel, after having been ruled against and admonished by the trial court, has nevertheless persisted in objectionable conduct or methods of argument, that this court has held new trials should have been granted." *Basile v. Fath,* 185 Wis. 646, 650, 201 N. W. 247, 202 N. W. 367.

We should add that we have examined the record, particularly that part of it which sets forth the argument, and find nothing which was so prejudicial or outside the case as would justify a reversal.

During plaintiffs' counsel's argument to the jury he referred to plaintiff's life expectancy based upon the assumption that he was twenty years old. The court interrupted to call attention to the fact that plaintiff was nineteen years old. Defendants urge that by such inadvertent statement the court improperly added to the emphasis placed by counsel upon the matter of plaintiff's life expectancy and his argument suggesting a mathematical computation of the damages. If there was error it was corrected by the court in his instructions. The jury was told "the question of damages is not ordinarily one for mathematical computation" and "these tables are not to be considered conclusive as to the expectancy of life of any particular person."

Before and during the trial defendants sought to obtain a photograph of plaintiff. Plaintiff refused to comply with the demands. Defendants contend that the court erred in refusing to require plaintiff to pose for a photograph and in denying the introduction of such evidence. Jones, in his work on Evidence, Civil Cases, makes it quite clear that this was not error. In volume 2, fourth edition, page 1098, sec. 581, he says that photographs may be introduced in

evidence to show the appearance of a member or portion of the body unless the member itself can be shown to the jury, and at page 1100 he says a party is under no obligation to offer photographs and that no unfavorable inference may be drawn from his failure to do so. "There must be some substantial, legitimate reason for the use of . . . [photographs], else they should not be received." *Baxter v. Chicago & N. W. R. Co.* 104 Wis. 307, 325, 80 N. W. 644. There was no such reason here. The presence of the plaintiff in court where his disfigurement could be observed by the jury made the use of a photograph unnecessary.

Is the award excessive? Plaintiff was nineteen years old at the time of the accident and attending St. Thomas College where he was a sophomore. He had attended social functions and appeared to enjoy the company of others. During the ten days he spent at home at the Christmas holiday season and also during his Easter vacation his father noticed a change in his personality in that he "didn't seem to want to mix with others" and that he had become more shy than he had been before. Before the accident he was in perfect health. His mother testified that since he seems to be more nervous.

In the collision his head hit the windshield and he was knocked unconscious, which condition continued until he was placed in a car to be taken to a hospital.

Prior to the accident he had a slightly noticeable scar below his right eyebrow which was the only blemish on his face. While at the hospital he had considerable pain and discomfort in his knee, leg, and shin. Because of the condition of his head he had a few headaches, but his most serious complaint in that respect is that of numbness near his left temple.

Dr. George H. Stevens treated the plaintiff from the time of the accident. He testified that the plaintiff had many terrible lacerations of his entire forehead and about his eyelid on the left side; that he had a cut where the nose attaches

to the face and a deep laceration on the right knee and the right shin. The cuts were bleeding freely. In order to stop the blood he sutured the cuts under local anesthetic and with a lot of stitching. He does not remember how many stitches there were but he recalls that he almost ran out of sutures trying to sew up so many shredded cuts in his forehead, eyebrows, and eyelid. Plaintiff left the hospital on the third day after the accident and the doctor saw him intermittently after that to dress the lacerations and remove the sutures. He testified that the scars that still remain will be permanent but will improve with time; that he thought plastic surgery might help; that in the case of cuts of the kind the boy had "you are bound to cut many little branches of nerves and are going to have a disturbed sensation in the area supplied by those nerve branches." The doctor testified that the scars would tend to improve over a long period of time and that the only treatment that he would advise would be plastic surgery to improve the cosmetic appearance. He testified that plaintiff has no loss of motion or physical-activity limitation; that his only residual is a cosmetic defect.

Dr. William H. Frackelton, in a deposition taken on behalf of the defendants, testified that his practice is limited to plastic and reconstructive surgery. He examined plaintiff on May 14, 1951, and plaintiff told him that he had a feeling of numbness in the left forehead and bad-looking scars of the face; that he was aware of the scarred appearance of the face.

The doctor found three curvilinear scars above the left eyebrow, one of them 1¾ inches long; one measuring 1½ inches, the other 2 inches long; in width they measured between 1/16 and 1/8 of an inch. He also found a well-healed linear scar measuring ⅜ inch in the mid-portion of the forehead and within the left eyebrow a scar measuring about ½ inch; and he also found a scar ⅜ inch long at the point of juncture of the lower lateral side of the nose with the

cheek, scars on the inner portion of the right leg alongside the kneecap, one measuring 3 centimeters by 1 centimeter, and the other 2.5 centimeters by 1 centimeter. He testified that plaintiff would improve from plastic surgery across the upper left forehead which would reduce the size of the scars and minimize them. Cosmetic surgery would improve the appearance of the plaintiff "to the extent that the scars would be less noticeable."

Dr. Frackelton testified that the cost of plastic surgery including hospitalization would be $500; that plaintiff would be able to do light work ten days after surgery and heavy work three weeks thereafter; that one operation would secure the maximum amount of correction but improvement might be gained by a second operation.

He testified that plastic surgery would not relieve the numbness that plaintiff complained of in the left forehead area; that the numb feeling is not dependent upon the scars but upon a nerve being cut or compressed; that numbness remains permanent as to existence although not in intensity. It tends to diminish by virtue of the natural phenomena of overlapping coming into that area. Some numbness to some degree may remain permanent.

Dr. Frackelton testified further that plaintiff's appearance would be improved by plastic surgery after which the scars would be discernible but not noticeable. After such surgery it takes about two years for natural blanching to take place.

Plaintiff testified that in the winter the cuts on his forehead and knee seem to pull and draw up. There is numbness which is still irritating and which causes him to feel it or scratch it; it is always quite noticeable; it runs from the top of his left eye back into the hairline and extends over the left temple. It happens constantly. It is always present.

Before the accident he had no hesitancy about riding in automobiles but now, especially at night in taking curves and seeing the lights coming toward him, he becomes quite

nervous at times. In other words, when he is confronted with a situation of the same type as caused the accident it makes him nervous, especially at night.

The cuts on the knee seem to irritate him quite a bit and in the winter they draw up and the leg aches occasionally. He is embarrassed by his scars when meeting people for the first time, particularly in the case of girls. He is always conscious of the presence of the scars and especially when he first meets people. He does not go out as much as he did before and attends fewer dances than he did before the accident.

He has been attending classes regularly since approximately one week after the accident. For a time he did not play basketball but in the spring following the accident he played tennis almost every day. He has not been dating as frequently because he is conscious of the scars.

It is apparent from the description of the injuries and their result that plaintiff has sustained no permanent disability except the numbness at the left temple and the disfigurement which will improve with time or by surgery. There is evidence of a personality change but nothing to indicate that he will not return to his former condition in that respect.

We consider that the award is excessive. We are of the opinion that the lowest amount at which an unprejudiced jury properly instructed would probably assess the plaintiff's damages is $5,000. Under the rule of *Reykdal v. Miller,* 216 Wis. 561, 257 N. W. 604, and *Asplund v. Palmer,* 258 Wis. 34, 44 N. W. (2d) 624, the cause is remanded for a new trial unless plaintiff within twenty days after filing of the remittitur in the court below serves upon defendants' counsel consent in writing that he accepts judgment in his favor for the sum of $5,000.

*By the Court.*—Judgment reversed and cause remanded for further proceedings in accordance with this opinion.