Chicago, North Shore & Milwaukee Railway Company, Appellant, vs. Greeley and another, Respondents.

*June 6—July 3, 1953.*

For the appellant there were briefs by *Heft, Burgess & Brown* of Racine, and oral argument by *Carroll R. Heft* and *Harley Brown.*

For the respondents there was a brief by *Helm, Myers & Gillett* of Racine, and oral argument by *Samuel P. Myers.*

FAIRCHILD, J.  The defendant, in driving his car from his home at Thompsonville, had occasion to cross the railway

of the Chicago, North Shore & Milwaukee Railway Company at about five o'clock p. m. at a crossing of this track by the Ole Davidson road, also known as Highway 31, in Racine county. This crossing is an open country crossing, protected by automatic lights, signals, and bells, as well as the customary crossbuck. The collision occurred on the 20th day of January, 1951, at 5:30 p. m. There was a blizzard, the wind was blowing hard, and "the snow was wet and packy." The defendant testified that visibility was poor, that at times he could see but a few feet ahead. As to his familiarity with the crossing, it appears that he lived in close proximity to it and had driven over it every day during the previous seven months. On this day he had crossed there twice prior to the accident. He was familiar with the fact that trains passed every hour, and at the time of importance here he knew a train was due at that crossing at about 5:30 that afternoon. We are referring to the spread of the time from defendant's crossing up to the moment of his starting to warn plaintiff of the danger.

The crossing consisted of planks between the rails and a dirt-and-gravel road. The emergency condition came about when Greeley drove to the left side, or his wrong side, on the crossing and his car went off on that side and the wheels became wedged between the rails of the southbound track. A friend following about 30 feet behind Greeley, when he saw Greeley's car going off the crossing, passed him to the right and stopped to help. At first they tried to rock and push the car out of its locked position; then they used towchains, but the more they pulled at the car, the more the wheels "slid in." They were unable to accomplish anything. There is testimony that they walked around for about fifteen or twenty minutes, but did nothing to warn the plaintiff of the dangerous condition then existing. As the train approached the crossing the defendant heard the train whistle. He then took his flashlight and ran up the track about 200 feet, in an

attempt to warn the motorman of the impending collision, but it was too late, and the collision occurred.

We may assume that the situation, dangerous to those rightfully using the railway's transportation system, was accidentally created by the automobile's becoming locked between the tracks of the railway. However, this misfortune did not relieve the defendant from the responsibility to act in accordance with ordinary care. He had the duty of moving the automobile or, after a reasonable attempt proved futile, to warn the plaintiff of the existing danger. While the situation created by the lodging of defendant's automobile on the railway's right of way was not wilful and may not have been due to negligence, still an obligation on him immediately arose to remove the obstruction and to act with ordinary care in the matter of giving notice of the existing obstruction where a collision would endanger those rightfully using the railway's transportation system. An act, or omission of an act, may be the foundation of a cause of action at law when it appears that the actor owed a duty to the injured party and negligently failed to respond to that duty.

The evidence establishes the fact that the train did not reach the crossing until 5:35 o'clock. The testimony of the defendant and his friend is that they approached the crossing at "about five o'clock." The evidence shows that this friend was traveling immediately in back of the defendant, and when the defendant went off the crossing the friend passed on the crossing, to the right of the defendant's car, that he stopped to help, that after trying unsuccessfully to push and rock the car out of the tracks, they attached a towchain from the friend's car to Greeley's car. The friend testified to the effect that: "I attached the chain to both cars. He [Greeley] got back in his car and I got in mine, and we tried with both engines to pull his car off the tracks. The more we pulled, the deeper his wheels slid in. They might have both went off the plank-

ing. When I first went up to his car, just his two left wheels were off the crossing. As we continued to try to get him out, the car seemed to want to work itself south all the time. Whether the right front went down I don't know, but I do know both back wheels went. He was out of his car and helping hook the towchain onto his own car. I was out of my car. The two of us walked around. We did that, I would judge, maybe fifteen minutes, possibly twenty. I had some knowledge of the North Shore train running out there. I knew there would be one sooner or later, but how soon I didn't know."

From this evidence and more of similar import in the record, the jury rightfully concluded that there was opportunity for mature deliberation and that the defendant ought to have discovered the hopelessness of his situation as to moving his automobile in time to give the necessary warning to the plaintiff's operators. The jury decided that, at the point in time when he and his friend saw that the more they pulled the deeper the wheels slid in, ordinary care required the defendant, in discharge of the duty to do everything that an ordinarily prudent man would do under similar circumstances, to warn plaintiff of the presence of the automobile on the right of way and of the imminence of a collision.

The inference being reasonable that the defendant had the opportunity to give a timely warning, the question then arises as to whether he met the duty placed upon him by law of exercising ordinary care to give such warning. Between the time when defendant knew or should have known that removing the car could not be accomplished by the means at hand and the intervening time before the train was due, he did nothing whatever to fulfil his obligation to give a warning of the existing danger. That he was aware of an obligation to warn is evidenced by the fact that when he heard the train whistle just before the impact, he did go up the track

for about 200 feet with a flashlight in an effort to warn the motorman. The flashlight beam was seen by the motorman, with the result that the emergency brakes were applied. The motorman was able to stop the train in 2,400 feet that night. It was within the competence of the jury, therefore, to infer that if the defendant had acted timely in response to his duty to give warning, he would have had ample time to go north along the tracks a sufficient distance to make the warning effective and to allow the motorman time to stop the train before it reached the crossing. After the accident a warning was given by a brakeman going up the track toward an oncoming train following ten minutes behind the train that was derailed by the collision.

There were also other means of warning available to the defendant which he did not attempt to use. There was a telephone at the house of a neighbor within 250 feet of the accident. The defendant had a helper. Neither he nor his friend tried to warn anyone who could have relayed a message to Ryan tower eight and one-half miles north of the crossing. A message to that tower nine minutes before the accident would have stopped the train.

The evidence in this case presents facts from which inferences drawn are justified. From these inferences it was determined by the jury that there was negligence on the part of the defendant. This question cannot be determined as a matter of law. It is the rule that where there is uncertainty as to the existence of negligence, the question is not one of law but one of fact to be settled by a jury. And this rule holds whether the uncertainty arises from a conflict in the testimony or because fair-minded men might draw different conclusions from the facts established. *Klotz v. Power & Mining M. Co.* 136 Wis. 107, 116 N. W. 770; *Richmond & Danville R. Co. v. Powers,* 149 U. S. 43, 13 Sup. Ct. 748, 37 L. Ed. 642.

In the case at bar a controversy over facts exists in the testimony, but there is credible evidence warranting the finding of the jury that the defendant failed to exercise ordinary care with respect to his duty of giving a warning to the plaintiff, and that such failure was a proximate cause of the damages sustained by plaintiff. Because the evidence is conflicting with respect to defendant's negligence, there is a question of fact for the jury, and it was error for the trial court to change the answers to questions 3 and 4 referred to in the statement of facts.

The trial court was of the impression that the jury resolved the questions of the special verdict by speculation, but it overlooks the distinction between a reasonable inference from established facts and mere conjecture or speculation. In the case of *Schoenberg v. Berger,* 257 Wis. 100, 107, 42 N. W. (2d) 466, we referred to the case of *Trautmann v. Charles Schefft & Sons Co.* 201 Wis. 113, 116, 228 N. W. 741, where it was said that "the problem is not the broader question of whether the findings of the learned circuit judge are more warranted by the evidence than the answers of the jury, but the inquiry is limited to the narrow issue of whether there is any credible evidence, which, under any reasonable view, will admit of inferences which may have been drawn by the jury. . . ."

We find no prejudicial error in questions submitted or in the instructions given, and are of the opinion that the verdict as rendered by the jury should be reinstated and judgment rendered accordingly.

*By the Court.*—Judgment reversed, cause remanded with directions to reinstate the answers to the verdict and grant judgment accordingly.