DOOLITTLE and wife, Respondents, v. WESTERN STATES MUTUAL INSURANCE COMPANY and others, Appellants.

*April 28—June 2, 1964.*

For the appellants there was a brief by *Mittelstaed, Heide, Sheldon & Hartley* and *William A. Sheldon,* all of Kenosha, and oral argument by *William A. Sheldon.*

For the respondents there was a brief by *Heft, Coates, Boggs & Heft* of Racine, and oral argument by *Carroll R. Heft.*

GORDON, J.  The appellants contend that the jury's damage awards were excessive.  They also urge that various errors were committed during the trial which provoked the allegedly excessive damage awards.

At the time of trial, which was approximately three years after the date of the accident, Myra Doolittle was seventy years of age, and George Doolittle was seventy-two years of age.  There was evidence that before the accident they were both active individuals and generally in good health.  They lived in Arizona and traveled extensively.  Since the accident, their activities have been decreased, particularly with reference to travel.

The principal argument of the appellants seems to be that Mr. and Mrs. Doolittle, by reason of their advanced age, are simply not entitled to awards of $7,500 and $45,000, respectively, because of the short life expectancy which remains for each of them.  Based on their ages at the time of trial, Mrs. Doolittle's life expectancy was 8.48 years and Mr. Doolittle's was 7.55 years.  Appellants' counsel has urged upon us the argument that the purpose of damage is not to "create an estate for the injured party."

While age and life expectancy are entirely proper items for consideration in the assessment of damage awards, it does not follow that persons of advanced years are to be foreclosed from receiving substantial awards.  If it were once a fact, it surely is no longer true that a septuagenarian is

expected to exist in a semiuseless state until the Grim Reaper inevitably arrives. Medical advances along with a better understanding about retirement and the use of leisure time have transformed the so-called "golden years" into the geriatric millennium which Robert Browning so familiarly described in "Rabbi Ben Ezra." Dr. Oliver Wendell Holmes was probably more correct than he himself realized when he wrote, "Age, like distance, lends a double charm."

We will examine the injuries which the respondents sustained and then will consider the various contentions as to errors committed during the trial.

### Injuries of Myra Doolittle.

Myra Doolittle was hospitalized after the accident for almost three months. As a result of the accident, she sustained fractures to several ribs, she incurred amnesia, and there was an injury to her head which left a scar of seven inches running across her forehead. She also sustained a punctured lung. Her left arm and right leg were both fractured. Both the arm and the leg were set without a general anesthetic. A perfect alignment of the bones was not attained, although casts were applied to both limbs.

Dr. Horsley, an internist, testified that she sustained a cardiac condition as a direct result of the accident. As further results of the accident, she developed a condition known as hammertoes on her right foot and also a bladder condition which necessitated frequent urination.

While hospitalized, Mrs. Doolittle was provided with a nasal catheter so that oxygen could be furnished to assist her in breathing, and she also was provided with a urinary catheter because of her semicomatose condition.

When examined shortly before trial by the orthopedist who had treated her after the accident, he found that she still limped on her right leg and that there was a backward angulation located just above her right ankle. This doctor

testified that as a result of her arm fracture she would have a 10 percent permanent partial disability at the level of the shoulder as compared to amputation. He also testified that with reference to her right leg she would sustain a 25 percent permanent partial disability at the level of the ankle as compared to amputation.

In describing her injuries, Mrs. Doolittle testified that she had difficulty walking because of her hammertoes and because of the leg fracture. She also testified that when walking her leg was frequently tender. With reference to the fractured ribs, she testified that she had discomfort to such an extent that she could not tolerate the pressure of a blanket on her chest.

### Injuries of George Doolittle.

George Doolittle was hospitalized for a period of approximately two months after the accident. He sustained a compound fracture of the right thumb; the orthopedist who treated him concluded that it represented a 15 percent permanent partial disability as compared to amputation. He also had numerous fractured ribs. He suffered from amnesia.

Oxygen was administered to George Doolittle by means of a nasal catheter. This was occasioned by the fact that he had difficulty in breathing and was short of breath. The rib fractures created a chest deformity which took the form of a flattening of the left side of his upper chest.

Without reference to the alleged errors which appellants contend occurred at the trial, we are persuaded that the jury's award of $45,000 to Myra Doolittle as approved by the trial court represents a reasonable figure based upon the injuries which she sustained in the accident. We also consider that the jury's award of $12,500 for the injuries to George Doolittle and reduced by the order of the trial court to $7,500 represents a reasonable award for the injuries which he sustained.

*Alleged Errors During Trial.*

The trial court instructed the jury relative to recovery for future pain and suffering. Upon this appeal, the appellants urge that this was error and that it contributed to the claimed excessiveness of the damages which were awarded by the jury.

The issue as to the alleged impropriety of the instruction was not raised at any time until this appeal. Objection was not made either in advance of or immediately after this instruction was given, nor was the alleged error called to the attention of the trial court on motions after verdict. Accordingly, the appellants are precluded from having this court pass on the alleged error as a matter of right pursuant to *Wells v. Dairyland Mut. Ins. Co.* (1957), 274 Wis. 505, 80 N. W. (2d) 380. We find no reason for exercising a discretionary power to examine the alleged erroneous instructions, and, accordingly, we conclude that there has been a waiver as to this claimed error.

The appellants also contend that a prejudicial error occurred when respondents' counsel in his argument to the jury stated that if Joyce Muldoon (the deceased driver of the other car) were alive, she would want to see the Doolittles compensated. This remark obviously was beyond the evidence in the case, and the trial court correctly sustained an objection to it and also instructed the jury to disregard it. We do not believe that there was any prejudicial effect as a result of this occurrence.

Appellants further urge that error occurred when the trial court failed to instruct the jury to disregard certain testimony relating to George Doolittle's heart condition. A motion was successfully made in chambers by appellants' counsel to strike the testimony regarding his heart condition, but no reference to the motion or the ruling thereon was presented to the jury. There was no express request

made by appellants' counsel that an instruction be given to the jury to disregard the stricken testimony. In our opinion, it would have been proper for the trial court to have instructed the jury to disregard this testimony, but the appellants are precluded from predicating error thereon in view of their failure to make a specific request therefor.

A further objection relates to the type of argument employed by the jury by respondents' counsel concerning damages. The appellants' contention is that respondents' counsel used an improper formula contrary to *Affett v. Milwaukee & S. T. Corp.* (1960), 11 Wis. (2d) 604, 106 N. W. (2d) 274. From the trial court's decision, we conclude that through rhetorical questions respondents' counsel suggested certain dollar figures for the several types of injuries. Presumably, he suggested separate figures for the broken leg, the fractured ribs, etc.

In the *Affett Case,* this court held that it was improper to use a mathematical formula arrived at on a time-segmented basis. We refused to broaden the restriction of the *Affett Case* in *Halsted v. Kosnar* (1963), 18 Wis. (2d) 348, 118 N. W. (2d) 864. We are now confronted by the question whether it is proper for counsel to propose several lump sums for separate injuries or whether he must confine himself to a *single* lump sum.

In our opinion, where there are two or more distinct items of injuries, as in the instant case, it is proper for the trial court to permit argument to the jury whereby a separate sum is urged upon the jury for each of such injuries.

*By the Court.*—Judgment affirmed.