KOBELINSKI, Plaintiff and Respondent, v. MILWAUKEE &
SUBURBAN TRANSPORT CORPORATION, Defendant and
Third-Party Plaintiff and Appellant: CITY OF MIL-
WAUKEE, Third-Party Defendant and Respondent.*

*No. 280. Argued October 30, 1972.—Decided December 7, 1972.*
(Also reported in 202 N. W. 2d 415.)

* Motion for rehearing denied, with costs, on January 30, 1973.

508

For the appellant there were briefs by *Kivett & Kasdorf,* attorneys, and *Nonald J. Lewis* and *Dennis C. Egan* of counsel, all of Milwaukee, and oral argument by *Mr. Lewis.*

For the plaintiff-respondent there was a brief by *Habush, Gillick, Habush, Davis & Murphy,* attorneys, and *James J. Murphy* of counsel, all of Milwaukee, and oral argument by *James J. Murphy.*

For the defendant-respondent there was a brief by *James B. Brennan,* city attorney, and *Rudolph T. Randa,* assistant city attorney, and oral argument by *Peter M. Stupar,* assistant city attorney.

CONNOR T. HANSEN, J. This appeal presents the following issues:

1. Was it error for the trial court, following the conclusion of testimony, to direct a verdict in favor of the third-party defendant, the city of Milwaukee, and dismiss the third-party complaint?

2. Did the trial court commit prejudicial error in failing to instruct the jury as to certain instructions requested by defendant?

3. Were the remarks of plaintiff's counsel during closing arguments to the jury so improper and prejudicial as to require a mistrial?

4. Did the trial court err in reducing the amount of damages awarded by the jury?

*Directed verdict.*

Generally, a municipality is, with respect to snow and ice on its sidewalks, under the duty of using reasonable

care to keep such walks reasonably safe for use by pedestrians, taking into account all of the circumstances involved.[1]

In *Holytz v. Milwaukee* (1962), 17 Wis. 2d 26, 115 N. W. 2d 618, this court abrogated governmental immunity for tort liability. Prior to *Holytz, supra,* the scope of a municipality's liability for the condition of its sidewalks was contained within the provisions of sec. 81.15, Stats. Sec. 81.15 provides, in part:

> "**Damages caused by highway defects; liability of town and county.** If damages happen to any person . . . by reason of the insufficiency or want of repairs of any highway which any . . . city . . . is bound to keep in repair, the person sustaining such damages shall have a right to recover the same from such . . . city . . . [upon giving a prescribed notice to the city within one hundred twenty days after the accident; but] [n]o action shall be maintained to recover damages for injuries sustained by reason of an accumulation of snow or ice upon any bridge or highway, unless such accumulation existed for 3 weeks."[2]

Subsequent to the *Holytz Case,* this court held that the limited liability of sec. 81.15 is no longer applicable to sidewalk cases. In *Stippich v. Milwaukee* (1967), 34 Wis. 2d 260, 270, 149 N. W. 2d 618, this court stated:

> "We think the limited scope of a municipality's liability under sec. 81.15, Stats., is no longer applicable to sidewalk cases and the question in such cases is not whether there was a defect, want of repair or insufficiency of the sidewalk which caused the injury but whether under the ordinary common-law rules of negligence the duty to maintain sidewalks reasonably safe was breached. This duty of a municipality to use reasonable care to keep its sidewalks reasonably safe for travel of pedestrians is only that which is reasonable under the circumstances. . . ."

---

[1] *See:* Annot. *Municipal Liability—Ice or Snow,* 39 A. L. R. 2d 782, 787.

[2] For the purpose of this section, a highway includes sidewalks. *Smith v. Jefferson* (1959), 8 Wis. 2d 378, 99 N. W. 2d 119.

However, the court went further to hold:

"All the limitations of sec. 81.15, Stats., such as notice, amount of recovery, etc., apply to the city's common-law duty and consequently no liability arises because of a natural accumulation of snow and ice existing less than three weeks. . . ." *Stippich, supra,* page 270.

Therefore the city is liable at common law for breach of its duty to maintain sidewalks in such a condition as is reasonably safe for public travel by a person exercising ordinary care for their own safety but subject to the administrative and other limitations of sec. 81.15. *Westler v. Milwaukee* (1967), 34 Wis. 2d 272, 149 N. W. 2d 624.

Our attention is directed to secs. 98–62 and 101–116 of the Milwaukee Code of Ordinances. We do not set them forth because we are of the opinion these ordinances are of no assistance in disposing of the issue before us. The city is liable for the conditions of its sidewalks, regardless of any ordinance it may pass limiting its liability or delegating it to another. There is no dispute in the record that the bus-loading zone was free of ice and snow for the required distance of 30 feet as required under sec. 98–62 of the Milwaukee Code of Ordinances, and that that portion of the sidewalk used for pedestrian travel was likewise free from ice and snow. Therefore, the city contends that as a matter of law it has met its burden to keep the sidewalks reasonably safe.

The city's theory of liability is, however, contrary to the great weight of legal authority and the law of Wisconsin.

An ordinance requiring abutting landowners to keep the sidewalks in repair does not relieve the municipality of its duty. As stated in 63 C. J. S., *Municipal Corporations,* p. 105, sec. 794:

". . . It is generally held that the duty of keeping sidewalks in a reasonably safe condition rests primarily

on the municipality; and this is true, even though there is a[n] . . . ordinance requiring the abutting owner to keep the sidewalk in repair and making him liable for failure to do so. . . ."

The law is similarly stated in 39 A. L. R. 2d 782, 822, sec. 34, as:

"The duty of a city to use reasonable care to keep its sidewalks reasonably safe is one which rests primarily on it and which it cannot delegate to abutting owners. Therefore, it is ordinarily held that a[n] . . . ordinance imposing upon the abutting owner the duty to remove or to sand snow and ice upon a sidewalk does not relieve the city from its primary obligation to keep the sidewalks safe for walking."

In accord is 19 McQuillin, *Municipal Corporations* (3d ed.), pp. 54, 55, sec. 54.19, which states:

". . . [A] municipality cannot shift to abutters its primary duty to exercise reasonable or ordinary care to maintain its sidewalks in a reasonably safe condition for travel . . . .
". . .
"The duty of an abutter with respect to the repair of sidewalks is entirely irrelevant to the issues in a case between a pedestrian on a sidewalk and the municipality. The fact that the abutting landowners are required by . . . ordinance . . . to . . . keep in repair sidewalks, does not relieve the city of its duty to exercise reasonable care and diligence . . . ."

This court, in *Stippich, supra,* page 270, has held:

". . . [C]ities can, if they have not already done so, require abutting property owners to clean sidewalks, to use abrasives, and otherwise keep the walk safe for public use. Sec. 66.615 (5) requires a duty to clean sidewalks of snow and ice in all cases where abutting owners or occupants fail to do so and the expense thereof can be charged to the owner. A city is also authorized to impose a fine or penalty. The ultimate duty and responsibility for the safety of sidewalks, however, rests with the city

and this responsibility cannot be delegated so as to free it from all liability."

Since the city cannot delegate its primary responsibility to maintain its sidewalks, it follows it cannot delegate or limit its primary liability by ordinance. Therefore, the question remains whether the city, subject to the limitations of sec. 81.15, Stats., has breached its duty to maintain sidewalks in such a condition as is reasonably safe for public travel by persons exercising ordinary care for their own safety.

This question was never submitted to the jury. Following the conclusion of the testimony, the trial court granted the city's motion for a directed verdict and dismissed the third-party complaint. Defendant contends that this was error. Although this court has stated that the preferred procedure is to reserve disposition of a motion to direct a verdict until after the jury returns its verdict,[3] the trial court did not err in failing to submit the question to the jury. The record, viewed most favorably to the defendant, contains no evidence upon which the jury could conclude that the city had failed to meet its duty in respect to the maintenance of its sidewalks.

There is no evidence that the accumulation of ice and snow upon which plaintiff fell existed more than three weeks. Sec. 81.15, Stats., provides that no action shall be maintained to recover damages sustained by reason of an accumulation of ice or snow unless such an accumulation existed for more than three weeks.

Defendant argues that the mound upon which plaintiff fell was the result of shoveling and not a "natural" accumulation, and, therefore, under this court's decision in *Laffey v. Milwaukee* (1958), 4 Wis. 2d 111, 89 N. W.

[3] *Low v. Siewert* (1972), 54 Wis. 2d 251, 252, 195 N. W. 2d 451.

2d 801, the three-week limitation of sec. 81.15, Stats., is inapplicable. In *Laffey, supra,* employees of the city fire department caused water to be discharged on the sidewalk, which water froze and created an icy condition. This court in *Laffey, supra,* pages 114, 115, held:

". . . In our opinion the provision of sec. 81.15, Stats., prohibiting recovery for injuries sustained 'by reason of an accumulation of snow or ice upon any bridge or highway' unless the accumulation had existed for three weeks, refers only to a natural accumulation of snow or ice, and does not apply to one artificially created by the city. The purpose of the particular provision is undoubtedly to give the municipality plenty of opportunity to learn of and remove snow and ice resulting from natural precipitation, before being held liable for failure to do so. We cannot believe the legislature intended to provide such a period of absolute immunity in cases where the city itself has negligently created the icy condition."

The evidence when viewed most favorably to defendant indicates that the mound of ice and snow was created by the pushing of snow off the heavily traveled portion of the sidewalk to the curb. The question, therefore, is whether the mound so formed constitutes an unnatural or artificial accumulation as these words are used within the *Laffey* opinion. It does not. As stated in 63 C. J. S., *Municipal Corporations,* pp. 125, 126, sec. 805, conflict exists among other jurisdictions as to whether a municipality, once it attempts to clear a portion of a sidewalk, is liable unless it clears all of it. On page 126, it is stated that:

". . . [A] municipality is bound to keep all of such part of a street as it undertakes to open and put in condition for travel in a reasonably safe condition for such use, and if the whole street has been opened for travel the entire width must be kept in a reasonably safe condition, and this rule is especially applicable to sidewalks in populous portions of cities. Thus the duty

to keep walks in a reasonably safe condition is not performed by keeping in such condition that part of the walk only which is most generally used; if any portion of a sidewalk is negligently left in such condition that pedestrians cannot travel over it with reasonable assurance of safety, by night as well as by day, the municipal authorities may be chargeable with a neglect of this duty to its citizens and the public generally. On the other hand, it has been held that a municipality is not liable for injuries caused by an obstruction at the side of the walk but not upon the part prepared for travel, if such part is sufficient for the purpose."

Although the issue of whether the shoveling of snow creates an artificial accumulation has never been before this court, in *Walley v. Patake* (1957), 274 Wis. 580, 80 N. W. 2d 916, this court held that the shoveling of a pathway through snow is not such an interference with the sidewalk upon which snow and ice have accumulated as to artificially create a defective and dangerous condition. In rejecting plaintiff's argument that the shoveling created a steep slope of ice and snow on each side and therefore created a defective and dangerous condition, this court, on page 585, stated:

". . . The law is well settled that if the owner or occupant of property does nothing in so far as snowfall is concerned he is not liable to a pedestrian who is injured because thereof. Plaintiffs seek to penalize the good citizens who make an attempt to improve the situation. Their efforts against this common enemy in Wisconsin should be encouraged. . . ."

Municipalities should be encouraged to make every reasonable attempt to clear its sidewalks of ice and snow. The evidence in this case indicates that that portion of the sidewalk designated as a bus stop and the portion used for pedestrian travel was free of ice and snow and that a small mound of ice and snow existed on the edge of the sidewalk along the curb, north of the bus stop.

Under the circumstances of this case, to hold the limitations of sec. 81.15, Stats., inapplicable would encourage the city to take no action at all for three weeks to clear its sidewalks. The municipality that attempts to clear its sidewalks would be immediately liable whereas those that do nothing, leaving the ice and snow where it falls, would enjoy a three-week period of immunity.

In addition, had the three-week limitation of sec. 81.15, Stats., been inapplicable, there is no evidence from which the jury could reasonably infer that the city had failed to meet its burden in keeping the sidewalk reasonably safe for pedestrian travel. The city is not the insurer of its sidewalks.[4] The issue is whether the action of the city was unreasonable under all the circumstances in allowing the condition to remain.[5] Among those circumstances to be considered in determining liability is location, climatic conditions, amount of accumulation, impracticability of removal, amount and character of traffic on the sidewalk, and the intended use thereof by pedestrians.[6] In the instant case, the evidence most favorable to defendant indicates that the portion of the sidewalk used for pedestrian travel parallel to the street was free and clear of ice or snow and that the city had cleared the entire sidewalk for approximately 30 feet.

Where there is uncertainty as to the existence of negligence, the question is not one of law but is one of fact to be settled by a jury, regardless of whether the uncertainty arises from a conflict in the testimony or because fair-minded men might draw different conclu-

---

[4] *Stippich v. Milwaukee, supra; Staples v. City of Spencer* (1937), 222 Iowa 1241, 271 N. W. 200; *Gates v. City of North Platte* (1934), 126 Neb. 785, 254 N. W. 418; Annot. *Municipal Liability—Ice or Snow*, 39 A. L. R. 2d 782, 787.

[5] *Stippich v. Milwaukee, supra,* page 271.

[6] *Westler v. Milwaukee, supra; Stippich v. Milwaukee, supra.*

sions from the facts established. *Chicago, North Shore & M. Ry. Co. v. Greeley* (1953), 264 Wis. 549, 59 N. W. 2d 498. However, under the circumstances of this case, there is no uncertainty as to lack of negligence on the part of the city. The city has, as a matter of law, met its duty to use reasonable care under all circumstances to maintain its sidewalks safe for pedestrian travel. It was not error for the trial court to grant the city's motion directing a verdict in its favor and dismissing the complaint.

### *Jury instructions.*

Defendant contends that the trial court improperly instructed the jury as to the law in that the court failed to give certain instructions, some of which were requested by the defendant, and another that was not. The instructions, as given by the trial court, were not objected to at the time they were given to the jury, nor at any time thereafter in the court below. The only objection, found in the record, taken to any part of the charge is found in defendant's motion after verdict for a new trial. Defendant raised eleven grounds in his motion. The eighth states that ". . . [T]he trial court erred in the instructions it gave, and erred in failing to give certain instructions requested by the defendant and third-party plaintiff, Milwaukee & Suburban Transport Corporation."

Motions after verdict must state with particularity the alleged error so as to apprise the trial court of the alleged error and give it an opportunity to correct it, thereby avoiding a costly and time-consuming appeal. *Wells v. Dairyland Mut. Ins. Co.* (1957), 274 Wis. 505, 80 N. W. 2d 380.

Defendant's motion fails to point out the alleged error with the requisite particularity. The burden is on the

defendant to demonstrate that the trial court was adequately apprised of the alleged error. *Wells v. Dairyland Mut. Ins. Co., supra.* The defendant has not established that the alleged error was specifically called to the attention of the trial court.

Defendant contends that the trial court rejected all of its requested instructions and, therefore, it need not allege the errors in instruction with any particularity. An examination of the record indicates that the defendant failed to request one instruction it now asserts the trial court omitted, and that other instructions requested by the defendant were, in their essence, given.

The law is clear that the failure to point out with particularity the grounds for error in a motion after verdict constitutes a waiver of such errors. The trial court need not work on a generalization of error. *Fringer v. Venema* (1965), 26 Wis. 2d 366, 132 N. W. 2d 565, 133 N. W. 2d 809; *Wells v. Dairyland Mut. Ins. Co., supra.* In *Meno v. Hoeffel* (1879), 46 Wis. 282, 285, 286, 1 N. W. 31, this court held the motion ". . . 'that the court erred in its instructions to the jury,'" was "[u]nder the decisions of this court, . . . entirely too general and vague to be of any avail to the appellant upon an appeal to this court. . . ."

Therefore, on the basis of the record before us, we are not obliged to now review the alleged errors in jury instructions. Furthermore, we find no reason for exercising a discretionary power to examine the alleged erroneous instructions.

*Counsel's remarks to the jury.*

In his closing argument to the jury, counsel for the plaintiff argued as follows:

"And the fifth question says, if you have answered both of them are causally negligent, then you must com-

pare the negligence. You have all been through this, maybe you haven't, I'm not sure. But you will be asked, taking one hundred percent of the negligence of both parties as a whole, then how much is attributed to the Transport Company and how much to Emily Kobelinski? And this is where, if you get to that point, this is where there is a very delicate balancing act that has to be done by you, because you are almost literally the scales of justice at that point. You have to ask yourselves how did—what did the Transport Company do compared to what Emily Kobelinski did? Who had control of the bus? Who could decide where the bus stopped? Who could decide whether to open that door and to let passengers out? Who had the obligation to exercise the highest degree of care for the safety of its passengers? Who could have stopped several feet from out into the roadway and let her get to safety that way? Who could have waited for the bus to go through the light? All those questions are answered by the Transport Company. How do you compare them to Mrs. Kobelinski's duty to exercise care for her own safety? There isn't any comparison. But if you find that they are both negligent, then I recommend that you find the Transport Company ninety percent and Mrs. Kobelinski ten percent, if you have to get to that kind of distribution.

"One thing I want to be very emphatic about, is that if you should even remotely consider dividing the negligence fifty-fifty, that you would be doing the gravest injustice to my client, to Emily Kobelinski. So, I ask you to reject any kind of an apportionment of negligence that even remotely resembles fifty-fifty."

There was no objection by counsel for defendant to this line of argument at this point. In the course of his rebuttal argument, counsel for plaintiff further argued:

"So, as far as the comparison is concerned, ladies and gentlemen, I just want to urge you one more time, if you think that Mrs. Kobelinski ought to have done something when you come to that part of the question for God's sake don't consider fifty-fifty, because if you were to come back with that kind of verdict you would be doing my client the gravest kind of injustice."

At this point, and for the first time, defendant's counsel objected. The trial court instructed the jury to disregard the statement and that the court would instruct them with respect to that subject.

Defendant argues that plaintiff's counsel's remarks were improper and prejudicial as to constitute grounds for a new trial. The trial court in its written opinion, following motions after verdict, correctly held:

". . . Although plaintiff's counsel's remarks were on the borderline, it cannot be said that such remark advised the jury of the result of its verdict. Counsel could just as well have said that a finding of 75 percent negligence against the defendant and 25 percent against the plaintiff would be an injustice to the plaintiff. Obviously, the jury must know that the comparative negligence question has some meaning. Plaintiff's counsel did not say that a 50–50 percentage of negligence would result in a verdict favorable to the defendant which, of course, would have been improper. Counsel was entitled to argue that the defendant was more negligent than the plaintiff. Had the jury returned a verdict finding the defendant 51 percent negligent and the plaintiff 49 percent negligent it might be said that they were influenced by the suggestion made by counsel. However, the fact that the jury found the defendant 80 percent negligent and the plaintiff only 20 percent negligent shows quite clearly that they were not influenced by any suggestions as to the effect of a 50–50 percent verdict."

The fundamental rule in this state is that it is reversible error for either the court or counsel to inform the jury of the effect of their answer on the ultimate result of their verdict, especially if it appears that the error complained of has affected the substantial rights of the party seeking to revise or set aside the judgment, or secure the new trial. *Erb v. Mutual Service Casualty Co.* (1963), 20 Wis. 2d 530, 123 N. W. 2d 493; *Pecor v. Home Indemnity Co.* (1940), 234 Wis. 407, 291 N. W. 313. This is true whether the jury is explicitly

informed or informed by necessary implication. *Banderob
v. Wisconsin Central Ry. Co.* (1907), 133 Wis. 249, 287,
113 N. W. 738. However, the charge or argument is not
improper merely because an intelligent juror might be
able to infer therefrom the effect upon the final result
of his answers to the special verdict. *Banderob, supra.*
The rationale of these rules was stated in *Anderson v.
Seelow* (1937), 224 Wis. 230, 234, 271 N. W. 844, as:

". . . The sole purpose of a special verdict is to get
the jury to answer each question according to the evi-
dence, regardless of the effect or supposed effect of the
answer upon the rights of the parties as to recovery.
To inform them of the effect of their answer in this
respect is to frustrate this purpose. . . ." [7]

It cannot be said that plaintiff's counsel's remarks
advised the jury of the result of its verdict. In addi-
tion, counsel for defendant failed to object to the state-
ments' first introduction. If any prejudicial error
existed, the defendant waived his objections thereto in
not objecting to the remarks in the first instance.
When no objection is made to an argument, alleged im-
propriety in the argument will not be considered.
*Rodenbeck v. American Mut. Liability Ins. Co.* (1971),
52 Wis. 2d 682, 190 N. W. 2d 917; *Doering v. Knudsen*
(1952), 261 Wis. 442, 53 N. W. 2d 445.

While this court disapproves of the statements made
by plaintiff's counsel, in light of the verdict's appor-
tionment of negligence, failure of defendant's counsel to
object, and the trial court's proper instructions to the
jury, it cannot be said that the remarks of plaintiff's

---

[7] Sec. 895.045, Stats., as amended effective June 23, 1971, pro-
vides that a party, where he is 50 percent negligent, may still
recover a portion of his damages. The jury's verdict is dated
August 19, 1971. However, it is irrelevant for the purpose of the
above-mentioned rule, that, if instructed as to effect, the jury
was erroneously instructed thereto.

counsel constitute prejudicial error, and, therefore, grounds for reversal.

## *Damages.*

The special verdict of the jury determined the plaintiff's damages to be as follows: Past medical and hospital expenses, $5,347.45; past loss of wages, $16,000; and personal injuries, $130,000. The damages award for personal injuries is identified as subdivision (C) of question No. 6 in the special verdict. The trial court, following defendant's motions after verdict, found that the jury's determination of $130,000 for personal injuries was excessive and reduced the amount to $80,000,[8] and, in accord with the *Powers* rule,[9] directed that there be a new trial on the issue of damages unless the plaintiff chose to accept the judgment as reduced. Thereupon, the plaintiff accepted the judgment as reduced.

Defendant argues that the award as reduced is still excessive[10] and as such an abuse of trial court discretion. Plaintiff, pursuant to sec. 274.12, Stats., has filed a "Notice of Review" and contends that neither the original award nor the award as reduced by the trial court is excessive and that the court below abused its discretion in reducing the jury award.[11]

[8] No issue is raised as to the reasonableness of the amounts of damages for past medical and hospital expenses and past loss of wages.

[9] *Powers v. Allstate Ins. Co.* (1960), 10 Wis. 2d 78, 102 N. W. 2d 393.

[10] No issue of perversity or that the excessive verdict in any way was the result of error occurring during the course of the trial is raised on this appeal.

[11] *Plesko v. Milwaukee* (1963), 19 Wis. 2d 210, 120 N. W. 2d 130. A plaintiff is entitled to raise the question of damages even where plaintiff has already accepted the option given by the lower court to take a reduced amount of damages.

We find the trial court's analysis of the evidence relevant to this issue of damages to be complete and accurate. Therefore, we set it forth in detail:

". . . This court must determine whether or not the sum of $130,000 for past and future pain and suffering and future lack of earning capacity is excessive.

"At the time of the accident the plaintiff was sixty-three years of age and was regularly employed as a fur sewer at a plant some distance from her home. During the year immediately preceding the accident she had gross earnings of $5,953.08. In view of the fact that she was earning $2.65 an hour a considerable part of those earnings must have been for overtime in excess of the usual forty hour week. She lived some distance from her place of work and was required to transfer from one bus to another to reach her home. She had fallen on previous occasions, particularly in February, 1965, when she slipped on the sidewalk and required medical attention. In 1965, she also had a weight problem and was under a doctor's care for a short period of time as a result of hypertension. In May of 1965, she had a mild sprain of her right ankle which required medical attention. Although at the time of the accident she was in good health it is reasonable to assume that she would not have been regularly and steadily employed for the entire period of her normal life expectancy, which is fifteen years from the date of the trial. It is unlikely that she would have worked many more years, even though she had not been injured as she was on January 20, 1969. Eligibility for social security payments would probably tempt her to discontinue working, especially at full time, many years before she would live for the normal period of life expectancy.

"Considering the case in the most favorable light to the plaintiff this court is of the opinion that the sum of $20,000 is a reasonable amount to be considered with respect to the impairment of her future earning capacity from the date of the trial.

"In addition to the loss of future earning capacity the jury included in its answer to Subdivision (C) of the damage question an amount for past and future pain and suffering in accordance with the instructions

embodied in Wis J I—Civil 1750. At the time of the accident she was a widow in good health and sole means of her own support. As a result of the injuries she was hospitalized for seven weeks during which time she was entirely bedridden and underwent an open reduction of the hip fracture with the insertion of a metal prosthesis. This operation left a seven inch scar on her hip. After the surgery she had considerable trouble with her hip. The neck of the hip bone dissolved leaving an ununited fracture of the head of the femur from the shaft of the femur. She cannot bear weight on her leg and is able to walk only by the use of a so-called 'walker' or with a four-pronged cane. She needs daily assistance in caring for her personal needs and, fortunately, she lives with members of her family who give her this assistance. She suffers daily pain, particularly when moving about, and is unable to leave her home without assistance. She is severely restricted in her social and recreational activities. She has considerable pain in the left hip. There is a one inch shortening of her left lower extremity. The plaintiff weighed about 184 pounds at the time of the accident, but now has reduced her weight to approximately 170 pounds. She is five foot seven or eight inches tall. The rest of her life she will continue to suffer severe pain and discomfort and will be unable to move about without considerable distress and without the aid of a walker or pronged cane.

"The plaintiff made a very favorable impression at the trial. She was gentle, reasonable, showed herself to be a very fine individual. The court is of the opinion that the jury was aware of the fact that, but for her disability she would probably have many years to enjoy life in retirement, and for that reason concluded that she should be awarded substantial damages for her disability, apart from loss of earning capacity. Without attempting to minimize the seriousness of her injuries, or the amount of pain and suffering she has and will endure in the future, the court is of the opinion that a reasonable amount to be awarded for her past and future pain and suffering and all past and future damages to be considered in connection with Subdivision (C) of the damage question, over and above the loss of future earning capacity, is an amount of $60,000. Therefore, the

court is of the opinion that Subdivision (C) of the sixth question should be answered in the sum of $80,000 instead of $130,000, which latter amount is excessive."

Where the trial court's analysis of the evidence upon which it approves or rejects a jury's damage award is complete, the reviewing court need not review the entire record as a matter of first impression and ascertain whether, in its judgment, the verdict is excessive. *Young v. Anaconda American Brass Co.* (1969), 43 Wis. 2d 36, 168 N. W. 2d 112; *Burke v. Poeschl Brothers, Inc.* (1968), 38 Wis. 2d 225, 156 N. W. 2d 378. In reviewing evidence to determine whether the damages are excessive, this court must, as the trial court properly did, view the evidence in the light most favorable to the plaintiff. *Bash v. Employers Mut. Liability Ins. Co.* (1968), 38 Wis. 2d 440, 157 N. W. 2d 634; *Baumgarten v. Jones* (1965), 26 Wis. 2d 703, 133 N. W. 2d 346. This court will review the evidence only to the extent necessary to determine whether the trial court abused its discretion. *Murawski v. Brown* (1971), 51 Wis. 2d 306, 187 N. W. 2d 194; *Makowski v. Ehlenbach* (1960), 11 Wis. 2d 38, 103 N. W. 2d 907.

After a review of the evidence, we find no abuse of discretion on the part of the trial court in reducing the jury award in the amount it did. The award as reduced by the trial court is within the range of a reasonably debatable amount. *Makowski, supra.*

Defendant cites several cases involving similar injuries as those sustained by plaintiff in the instant case and from the comparison concludes the award as reduced is excessive. This court has held that each case must be considered on its own facts and record and that great care must be exercised in considering other cases with comparable injuries. *Springen v. Ager Plumbing & Heating, Inc.* (1963), 19 Wis. 2d 487, 493, 120 N. W. 2d 692.

Furthermore, the cases cited by the defendant are distinguishable from the instant case as to the age of the injured party, nature of the injury, and proof of damages offered at trial.

In *Doolittle v. Western States Mut. Ins. Co.* (1964), 24 Wis. 2d 135, 139, 128 N. W. 2d 403, this court stated:

"While age and life expectancy are entirely proper items for consideration in the assessment of damage awards, it does not follow that persons of advanced years are to be foreclosed of receiving substantial awards. If it were once a fact, it surely is no longer true that a septuagenarian is expected to exist in a semiuseless state until the Grim Reaper inevitably arrives. . . ."

No abuse of discretion has been demonstrated on this appeal as to the issue of damages. The reduction in the amount of damages made by the trial court was proper and reasonable.

*By the Court.*—Judgment affirmed.

HALLOWS, C. J. *(concurring)*. I think the rule should be changed so that a jury can be told the meaning of their verdict. See my dissent in *Vincent v. Pabst Brewing Co.* (1970), 47 Wis. 2d 120, 139, 177 N. W. 2d 513. We now tell a jury the result of its finding in insanity cases. *See State v. Shoffner* (1966), 31 Wis. 2d 412, 428, 143 N. W. 2d 458. It is better for a knowledgeable jury to be correctly informed of its duty than to let an uninformed jury make an erroneous guess in its search for the truth. The special verdict is no longer strictly a factual inquiry; the jury is asked to apply the law in most cases the same as it does in a general verdict and to give its community orientated judgment without the aid of guidelines to the question concerning the apportionment of negligence. The court should be allowed to instruct the jury, not only of the

effect of their apportionment answer, but that if it is not sustained by the evidence it may be set aside or modified by the court. If the jury knew the full extent and the limitation of its role and the role of the court in the trial of a lawsuit, their verdicts would be more realistic and just.