SCHATTSCHNEIDER, Plaintiff, v. MILWAUKEE & SUBURBAN
TRANSPORT CORPORATION, Defendant and Third-
Party Plaintiff-Appellant: CITY OF MILWAUKEE,
Third-Party Defendant-Respondent.

*No. 682 (1974). Argued March 3, 1976.—Decided April 7, 1976.*
(Also reported in 240 N. W. 2d 182.)

254

For the defendant-appellant there were briefs by *Nonald J. Lewis, John A. Torreano* and *Kasdorf, Dall, Lewis & Swietlik* of Milwaukee, and oral argument by *Nonald J. Lewis.*

For the defendant-respondent there was a brief by *James B. Brennan,* city attorney, and *Charles R. Theis,* assistant city attorney, and oral argument by *Mr. Theis.*

ROBERT W. HANSEN, J.   Upon the facts set forth, was there a question for the jury to answer as to breach of a duty owed by the city to the plaintiff passenger on the bus? The standard of care devolving upon the city and the factors to be considered in applying such standard are alike set forth in the recent decision of this court in *Kobelinski v. Milwaukee & Suburban Transport Corp.*[1]

That standard of care is that: "Generally, a municipality is, with respect to snow and ice on its sidewalks, under the duty of using reasonable care to keep such walks reasonably safe for use by pedestrians, *taking into account all of the circumstances involved.*"[2]   (Emphasis supplied.)

The test as to whether such standard of care has been met is ". . . whether the action of the city was unreasonable *under all the circumstances* in allowing the condition [*i.e.,* the three-foot-high snowbank] to remain [here for more than one month]."[3]   (Emphasis supplied.)

Circumstances to be considered in determining whether such standard and such test have been met include: ". . . location, climatic conditions, amount of accumulation, impracticability of removal, amount and character

---

[1] (1972), 56 Wis. 2d 504, 202 N. W. 2d 415.

[2] *Id.* at pages 509, 510.

[3] *Id.* at page 516.

of traffic on the sidewalk, and the intended use thereof by pedestrians."[4]   As in *Kobelinski*, the circumstances present in the record will be reviewed circumstance by circumstance.

*Location of sidewalk.*   We deal here with a sidewalk, concrete from store buildings to curb, at the point of an 80-foot zone for the loading and unloading of bus passengers.   In the absence of an obstruction the entire sidewalk was used for pedestrians walking parallel to the storefronts.   Also, the entire 80-foot loading zone was used by bus passengers for getting to and coming from the buses stopping at the bus stop.   In *Kobelinski* a corner bus stop was involved, and there was no showing either of pedestrian traffic on the entire sidewalk from store buildings to curb or of use of the entire loading zone, whatever it may have been in *Kobelinski*.

*Climatic conditions.*   We have here a snowbank, three feet high, on the curbline of the sidewalk that resulted from the shoveling of several snowfalls from the building side of the walk, with the last addition to the embankment made by city workers more than one month before the date of the accident.   In *Kobelinski* the two to three-inch-high mound of snow along the curb existed for less than three weeks.[5]

*Amount of accumulation.*   We have here present a three-foot-high embankment of snow between the cleared portion of the sidewalk and the curb at which the bus unloaded its passengers.   *Kobelinski* dealt with a two- to three-inch accumulation of snow on the curbline of the walk.[6]   As to the hazard presented to those who must

---

[4] *Id.* at page 516.

[5] *Id.* at page 513, also noting: "Sec. 81.15, Stats., provides that no action shall be maintained to recover damages sustained by reason of an accumulation of ice or snow unless such an accumulation existed for more than three weeks."

[6] *Id.* at page 507.

get over the hurdle, there is a considerable difference between a three-inch hurdle and a three-foot hurdle.

*Impracticability of removal.* We have in this record the testimony of the street repair foreman for the city that it took the snow removal crew only eleven minutes to clear the first 30 feet of the 80-foot bus stop zone. In *Kobelinski* there is no reference in the opinion as to the amount of time involved to clear either the portion that was cleared or the portion of the unloading zone left uncleared.

*Amount and character of traffic.* We have here undisputed testimony that stores on the street begin to open at approximately 9:00 a.m. and that pedestrian traffic was particularly heavy at the time of the accident, *i.e.,* 8:45 a.m. There was testimony that during such periods of heavy traffic, in the absence of obstruction, the entire sidewalk, buildings to curb, was used by pedestrians as a walkway. In *Kobelinski* there was no similar showing of particularly heavy pedestrian traffic at the scene and at the time of the accident. There is a difference then both as to amount and character of the traffic on the sidewalks involved in each case.

*Intended use by pedestrians.* Here we have testimony establishing a regular and heavy use of the sidewalk at the bus loading zone. Here there is no corner loading zone where, particularly in residential areas, buses arrive a half-hour or more apart with only one bus likely to use the zone at any one time. Then clearing only 30 feet of an 80-foot loading zone would clearly be reasonable. The testimony here is that, because of the nearness of the Kinnickinnic bus barns, buses from several routes used this loading zone to take on or discharge passengers. Additionally, it was a transfer stop for bus passengers changing to other bus routes. Thus the use of the 80-foot zone by more than one bus at a time was not only usual but also entirely reasonable. Stacking up buses in

order that only one bus would unload passengers at any one time would not serve the needs for mass transit, the convenience of bus passengers or the safety of motorists also using the street. In *Kobelinski* there was no similar showing as to the heavy use of the sidewalk from buildings to curb for getting on or off more than one bus at a time.

In holding that under all the circumstances here present a jury question was presented as to the city having met its standard of care, we follow and apply the authority quoted in *Kobelinski*, that: " '. . . if any portion of a sidewalk is negligently left in such condition that pedestrians cannot travel over it with reasonable assurance of safety, by night as well as by day, the municipal authorities may be chargeable with a neglect of this duty to its citizens and the public generally.' "[7] The quote continues: " 'On the other hand, it has been held that a municipality is not liable for injuries caused by an obstruction at the side of the walk but not upon the part prepared for travel, *if such part is sufficient for the purpose.*' "[8] (Emphasis supplied.) In *Kobelinski*, under the relevant circumstances there present, this court held as a matter of law that the clearing of a portion of the sidewalk for walking parallel to the buildings and the clearing of 30 to 34 feet of the bus loading zone was "sufficient for the purpose" and met the city's duty to pedestrians. In the case before us, considering the different circumstances here established to be present at the time of the accident, we hold that a jury question was presented as to whether the city met its standard of care and duty owed to this plaintiff when it left uncleared 50 feet of the 80-foot bus loading zone and allowed the three-foot-high embankment of snow to re-

---

[7] *Id.* at page 515, quoting 63 C. J. S., *Municipal Corporations*, p. 126, sec. 805.

[8] *Id.* at page 515.

main on the curbline of the Mitchell Street sidewalk for more than a month.

Holding that the jury should have been permitted to decide whether the city breached a duty of ordinary care owed to this plaintiff under all the circumstances, we set aside the order of the trial court in granting the city's motion for directed verdict and reverse the judgment entered following the granting of such motion.

*By the Court.*—Judgment reversed, and cause remanded for a new trial consistent with this opinion. Costs are awarded to appellant.