STATE EX REL. SCHWENKER, Respondent, vs. DISTRICT COURT OF MILWAUKEE COUNTY and PAGE, District Judge, Appellants.

*December 11, 1931—January 12, 1932.*

601

602

For the appellants there was a brief by the *Attorney General, George A. Bowman,* district attorney of Milwaukee county, and *Walter J. Hofer,* deputy district attorney, and oral argument by *Mr. Bowman* and *Mr. Hofer.*

For the respondent there was a brief by *Gilbert, Ela, Heilman & Raeder* of Madison and *Miller, Mack & Fairchild* of Milwaukee, and oral argument by *Paul R. Newcomb* of Milwaukee and *Roman Heilman.*

FAIRCHILD, J. The complaint does not suggest that respondent entered into any combination or conspiracy with the officials of the bank. He is charged with having neglected or failed to act at a given time on information alleged to have been in his possession and as the duties of his office requires of him.

An orderly disposition of this case requires an answer to the question as to where the venue is to be laid. If an offense known to the law is stated, does the record show it to have been committed elsewhere than in Milwaukee county? If so, the writ in this instance is properly granted and the case, at least for the present, is at an end. The writ of prohibition is not to be used for the purpose of delay or to take the place of the usual provisions for appeal and review, but it is a proper remedy, as was held by the learned trial judge, where the duty of the court proposing to act is plain and such court is refusing to proceed within the line of such duty. *State v. Fischer,* 175 Wis. 69, 184 N. W. 774; *Petition of Inland Steel Co.* 174 Wis. 140, 182 N. W. 917.

We are dealing with a case in which the head of one of the state's important departments is charged with failure to

administer his office effectively, and by so failing "did know-ingly, wilfully, and feloniously violate those provisions of law set forth and contained in sec. 220.08 of the Revised Statutes."

Sec. 7, art. I, Const., in part reads:

"In all criminal prosecutions the accused shall enjoy the right . . . to a speedy public trial by an impartial jury of the county . . . wherein the offense shall have been com-mitted, . . . previously ascertained by law."

Sec. 356.01, Stats., provides: "All criminal cases shall be tried in the county where the offense was committed, except where otherwise provided by law."

There are crimes which may be committed by one in a county in which he has not been physically present. Ap-pellant has cited such cases as *Simpson v. State,* 99 Ga. 41, 17 S. E. 984, and *Adams v. State,* 164 Wis. 223, 159 N. W. 726. These and other cases turn on the proposition that in legal contemplation a crime is committed in the place where the doer's act takes effect. Such cases are distinguishable from the one under consideration. Here the respondent is charged, as the record stands, with having while in his office at Madison, where the law requires him to have his office and dispatch his work, determined with evil intent to refuse to perform a duty imposed on him by law. Had he there determined that it was his duty at that particular time to close the bank in the ordinary course of events, either he or some assistant representing him would have proceeded to Milwaukee. But the mental processes which are claimed as the foundation for this prosecution and the evil intent accompanying were initiated and concluded in Dane county. He is not accused of wrecking the bank or being a party to any unlawful act by any officer of the bank.

Statutes should be construed as far as possible in har-mony with their policy and with the common law. The position of commissioner of banking was not created with

the idea that he would be a superbanker, responsible at all times for all banks within the state. The purpose was to have banks subject to investigation and to a certain amount of control in the interest of sound banking, and to carry out this purpose there was given to the commissioner authority to recommend and require changes in practices and methods of a bank when violating its charter or any law of the state, or conducting its business in an insolvent or unauthorized manner; to assist in the installation of good banking methods making failures less frequent and reducing as far as possible the disastrous consequences flowing from mismanagement and dishonest conduct in the banking world. Assistants and deputies are provided and important duties allotted to them. The general policy of the department, however, and important decisions are undoubtedly controlled by the commissioner. Vital matters are usually considered and determined by the individual who happens to hold the position, and good practice would seem to require that he act upon information brought to his office in the capitol of the state. This is an important office. Its efficiency is of grave concern to the whole state. Assume that on a certain day demands are made upon the commissioner at his office for action by him, respectively, in Ashland, Kenosha, Milwaukee, and Eau Claire, and that the commissioner, believing he has some discretion in the matters involved, favors a different course from the particular one suggested in the individual case and refuses to take the desired step. Would it appear to be consistent with the interest of stable government to require him to answer a criminal charge for failure so to act in each of the respective counties? The legislature has not made its intention to make such an intolerable result possible, manifest by any existing enactment. The legislative estimate of the importance of this position and its desire to have this officer as free and independent as an official may be in the dis-

charge of his duties is suggested by the enactment of sec. 17.07 (3) :

"Removals from office of . . . appointive state officers may be made as follows: . . . (3) state officers appointed by the governor by and with the advice and consent of the senate, . . . by the governor at any time, for cause; but the commissioner of banking may be so removed only by and with the consent of a majority of the members of the senate."

The service desired from this department by the people of the state was not to be interfered with by compelling the commissioner to lose the time and suffer the embarrassment following from accusation and arrest in any and every town or city where banks may have disappointed their communities by unfortunate management. As suggested, he is not charged with conspiring with any officer of the bank to the hurt of any one, or corruptly gaining any advantage to himself by reason of which the solvency of this bank was affected. Such a charge would, of course, be based on facts differing from those before us and might bring one so accused within the rule that a crime may be committed by one in a location in which the accused has never been physically present. But the facts in this case limit the activities, so far as this complaint is concerned, on the part of the accused, to his office in the city of Madison and requires the holding that if any prosecution is to follow it must be in Dane county.

Language is used in the complaint charging the commissioner with knowingly, "wilfully and feloniously" violating those provisions of the law set forth and contained in sec. 220.08, he being a person mentioned in secs. 348.28 and 348.29 of the Statutes. Sec. 348.28 provides:

"Any officer . . . of the state . . . who shall have, reserve or acquire any pecuniary interest, directly or indirectly, present or prospective, absolute or conditional, in any way or

manner, in any purchase or sale of any personal or real property or thing in action, or in any contract, proposal or bid in relation to the same, or in relation to any public service, . . . account, order, warrant or receipt made by, to or with him in his official capacity or employment, or in any public or official service, or who shall make any contract or pledge, or contract any indebtedness . . . in his official capacity, or in any public or official service not authorized or required by law, or who shall make any false statement, certificate, report, return or entry in any book of accounts or of records in respect to anything done or required to be done by him officially . . . or who shall ask, demand, or exact for the performance of any service or duty imposed upon him by law any greater fee than is allowed by law for the performance of such service or duty, shall be punished," etc.

And sec. 348.29 reads:

"Any person mentioned in section 348.28 who shall pay, redeem, discount or purchase any debt, claim or demand in favor of any other person, against the state, or any county, town, school district, school board, city or village therein, or against any fund thereof below the true and full amount thereof, or who shall pay any such debt, claim or demand for any purpose out of any fund not provided for such purpose, or who shall wilfully violate any provision of law authorizing or requiring anything to be done or prohibiting anything from being done by him in his official capacity or employment, or who shall refuse or wilfully neglect to perform any duty in his office required by law, or shall be guilty of any wilful extortion, wrong or oppression therein shall be punished by imprisonment in the county jail not more than one year or by fine not exceeding five hundred dollars."

While in effect the complaint charges that the defendant acted corruptly in his office, it does not specify the ground relied upon to justify the commissioner in taking possession of the property and business of the Franklin State Bank, nor does it specify the particulars as to the orders and

warnings ignored by the bank. The lack of these specifications may be corrected by proper proceedings in the district court acting within its jurisdiction, and so far as this feature of the complaint is concerned the writ of prohibition would not be necessary to protect the rights of the defendant.

It follows from the phraseology of the statute that unless evidence is offered of corrupt conduct the complaint cannot be sustained. Where an official having discretion in a certain matter acts upon his judgment in good faith, although erroneously, such act is not corrupt within the meaning of the statute, and likewise if, in the exercise of his discretion, he takes no action although he errs, he is not guilty of neglect as that term is used in the sections quoted. This legislation is calculated to prevent an abuse of public justice by preventing an officer from unlawfully taking, by color of his office, from any man any money or thing of value that is not due him, or more than is due him, or before it is due. It is intended by the influence of the penalty in cases where necessary to insure, as far as possible, righteous conduct by any officer in his office in dealing with public affairs and with the public or any member thereof, and to keep such officer from acting in any particular in the hope of private gain or from selfish motives.

Having reached the conclusion that venue in this matter should be laid in Dane county, it follows that the writ of prohibition was properly issued and that it is unnecessary in this opinion to discuss further the other points raised. But because of the serious interruption of the state's business which may follow proceedings of this character, we feel that the suggestion of a policy to be followed is warranted. The propriety, in a doubtful case, of instituting criminal proceedings against an official who is bound to encounter serious difficulties in the management of his department in connection with the business of banks and who is given broad discretionary powers, may well be questioned. If the pros-

ecution relates solely to the policy of the department and the method of administration under the statutes quoted, the course is suggested of permitting the governor and the representatives of the people of the state in the senate to act. Every citizen is interested in the wise and successful operation of the affairs of this important department, and in the absence of evidence of corruption or acts of a selfish nature tending to show criminal intent no proceeding should be taken without consultation with the chief law officer of the state, the attorney general, and if it then be determined that evidence of that character is lacking and that it is a question of policy in administration, the matter should be referred to those to whom the people have intrusted the power of removal. It must be borne in mind that in times of distress, excitement on the part of a few or many may lead to a demand for acts which are not just, and officials are bound then to act with great deliberation with a view to protecting the rights and reputation of a citizen in office as well as those not in office and of maintaining an orderly administration of justice.

*By the Court.*—Order affirmed.