STATE of Wisconsin, Plaintiff-Respondent,

v.

Frances GOMAZ, Defendant-Appellant.

Supreme Court

*No. 86–0933–CR. Argued September 15, 1987.—Decided November 4, 1987.*

(Also reported in 414 N.W.2d 626.)

For the defendant-appellant there was a brief and oral argument by *Mark Lukoff,* first assistant state public defender.

For the plaintiff-respondent the cause was argued by *Sally L. Wellman,* assistant attorney general, with whom on the brief was *Donald J. Hanaway,* attorney general.

LOUIS J. CECI, J. This appeal is before this court on certification from the court of appeals pursuant to sec. (Rule) 809.61, Stats. The appeal is from a judgment of conviction of the defendant for first-degree murder while using a dangerous weapon, under secs. 940.01(1) and 939.63(1)(a)2, in the circuit court for Kenosha county, Judge David M. Bastian. The substance of this appeal was the defendant's claim that the trial court erred in refusing to instruct the jury as to imperfect self-defense while finding reasonable grounds to exist in the evidence to instruct the jury as to perfect self-defense. The question specifically presented on certification concerned the application of *State v. Sarabia,* 118 Wis. 2d 655, 348 N.W.2d 527 (1984), where a defendant requests instructions on both the perfect self-defense privilege under sec. 939.48, and the lesser-included offense of imperfect self-defense under sec. 940.05(2).

The act which formed the basis of the first-degree murder charge was a stabbing incident involving the deceased, Edward Coffey, and the defendant, Frances Gomaz. The issue ultimately certified by the court of appeals developed as a result of the state's position that since the stabbing was allegedly unintentional, an instruction of self-defense, which requires an intentional act, would be inappropriate under principles most recently articulated in *State v. Johnnies,* 76 Wis. 2d 578, 251 N.W.2d 807 (1977). The state subsequently retracted its earlier position that the defendant's claim was exculpatory and inconsistent with self-defense,[1] maintaining, however, that the objection which the defendant could have made as to the trial court's failure to instruct the jury regarding imperfect self-defense was withdrawn or waived. To the extent that the state now concedes the substance of the challenged omission in the jury instructions, the facts of this case may be stated as follows.

[1]In a letter dated September 10, 1987, the Attorney General stated as follows:

"The state is now convinced that it must retract its earlier argument that under *Johnnies,* this defendant was not entitled to self-defense instructions. The *Johnnies* line of cases is correctly applied only to those situations where the defendant does not claim she/he threatened the use of deadly force in self-defense and does not claim she/he actually believed the threat to use deadly force was necessary in self-defense. *Johnnies* does not apply to preclude self-defense instructions where, as here, the defendant claims she threatened the use of deadly force in self-defense, actually believing the threat to use deadly force was necessary in self-defense, but claims the act which caused death was accidental."

## I.

It is undisputed that Edward Coffey died in the defendant's apartment on September 15, 1985, as the result of a "double-struck" stab wound[2] to the heart, inflicted by the defendant. It was uncontroverted that the defendant was a 51-year-old woman, four feet eleven and one-half inches tall, and weighed between 130 and 140 pounds at the time of this stabbing incident. The deceased was 36 years old, six feet and one-half inch tall, and weighed approximately 220 pounds.

At trial, the defendant testified that the deceased had physically abused her and had severely beaten her the day preceding his death. There was testimony from a physician who had examined the defendant on September 16, 1985, offered to substantiate the claim that the defendant had sustained injuries. The physician testified that he had observed multiple bruises, at least one day old, indicating a blunt type of trauma consistent with the defendant's description of having been beaten. There was further expert medical testimony offered to corroborate the claim that she had sustained soft-tissue trauma restricting the movement of her arm. Additionally, the defendant claimed the deceased had a violent disposition and introduced testimony of several witnesses in support of this reputation. The proffered testimony described the deceased's reputation for violence as being generally associated with intoxication. Autopsy samples, however, did not detect the presence of alcohol or drugs in

---

[2]The coroner-pathologist described the double-struck stab wound as two penetrating wounds into the heart but only one entry through the skin.

the deceased's blood or urine. The defendant admitted that she had been drinking alcohol prior to the stabbing incident of September 15.

On the day that Coffey was killed, the defendant claimed that she had taken a knife from a kitchen drawer and was holding it in front of herself when Coffey approached her with his hands outstretched toward her neck, in what she perceived to be a life-threatening manner. The defendant further testified that she told Coffey to stay away from her. The defendant claimed that when Coffey approached her, she froze, and he pushed himself upon her. She maintained that although she had threatened Coffey with the knife in order to protect herself, she did not thrust the knife and was not, in fact, even aware that it had penetrated his body. Specifically, the defendant stated that "[h]e got to me and he put both of his hands on my shoulders and he as I still held the knife in my right hand, he seemed to make this quick move at me and he went into the knife which I held in my hand." The defendant additionally stated that she was not aware that Coffey had been injured as a result of this encounter because she observed him walk to a kitchen table and sit down. Coffey's body was later found on the floor, adjacent to the defendant's bed.

Prior to the instructions conference, the defense counsel had submitted a written request for several jury instructions, including instructions regarding the absolute self-defense privilege, sec. 939.48, Stats., and the lesser offenses of second-degree murder, sec. 940.02; manslaughter in heat of passion, sec. 940.05(1); imperfect self-defense, sec. 940.05(2); and homicide by negligent use of a weapon, sec. 940.08. The court, however, gave instructions on first-degree murder; second-degree murder; manslaughter while in heat of

passion; and the absolute privilege of perfect self-defense under sec. 939.48. The defendant's request for an instruction on imperfect self-defense manslaughter was denied and forms the basis of this appeal.

## II.

The state has, as discussed above, retracted its initial position, now conceding that the defendant should have been given both perfect and imperfect self-defense instructions, but maintaining that any objection to the failure to instruct has been waived. However, the issue of whether or not a jury should be instructed on a lesser-included offense is a question of law. *State v. Williford,* 103 Wis. 2d 98, 112, 307 N.W.2d 277 (1981), *petition for habeas corpus denied sub nom. Williford v. Young,* 604 F. Supp. 1173 (E.D. Wis.), *aff'd* 779 F.2d 405 (7th Cir. 1985), *cert. denied* 106 S. Ct. 1982 (1986). As such, the state's retraction of its position as to whether the defendant was entitled to an instruction on imperfect self-defense is a concession regarding a question of law which this court is not bound to accept. *Liberty Homes, Inc. v. Department of Industry, Labor and Human Relations,* 125 Wis. 2d 492, 502, 374 N.W.2d 142 (Ct. App. 1985) (citing *Swift & Co. v. Hocking Valley R. Co.,* 243 U.S. 281, 289 (1917)), *aff'd* 136 Wis. 2d 368, 401 N.W.2d 805 (1987). The trial court's failure to instruct the jury as to imperfect self-defense constitutes the only error alleged as grounds requiring a new trial. Thus, regardless of whether the objection as to the omission of this instruction was properly preserved, unless this objection articulated a prejudicial error, a new trial would not be required. Because of the significance of this issue both as to this matter and with respect to the

more general need for its resolution, we have examined the state's acquiescence regarding the propriety of the trial court's exclusion of the imperfect self-defense instruction.

The state's initial position, and the issue certified by the court of appeals, addressed the proper application of *Sarabia* and the *Johnnies* line of cases. This court's decision in *Johnnies* restated a proposition articulated in several earlier decisions:[3] since self-defense is premised upon an intentional act, an assertion of accidental or unintentional killing is inconsistent with a claim that use of force is necessary for self-defense. Alternatively stated, *Johnnies* held that an exculpatory defense cannot provide the basis for submitting a self-defense instruction.

In *Sarabia,* this court held that in its determination of whether to submit a lesser-included offense instruction, the trial court must recognize the fact that a jury could disbelieve the defendant's version of the facts. Specifically, despite a defendant's exculpatory testimony, *Sarabia* held that a seemingly contradictory request for an imperfect self-defense instruction should *not* be denied where evidence *"other than* that part of the defendant's testimony which is exculpatory supports acquittal on the greater charge and conviction on the lesser charge." *Sarabia,* 118 Wis. 2d at 663 (emphasis added). The court of appeals apparently gleaned an inconsistency between *Sarabia* and *Johnnies* and, thus, sought a determination of whether *Sarabia,* which was determined with respect to imper-

---

[3]*Cleghorn v. State,* 55 Wis. 2d 466, 198 N.W.2d 577 (1972); *Day v. State,* 55 Wis. 2d 756, 201 N.W.2d 42 (1972); *Thomas v. State,* 53 Wis. 2d 483, 192 N.W.2d 864 (1972).

fect self-defense, applied where both perfect and imperfect self-defense instructions were requested.

■

The standard to be applied in a determination of whether an instruction should be given to a jury has been consistently stated to require submission of a lesser-included offense instruction only where "'under a different, but reasonable view,' the evidence is sufficient to establish guilt of the lower degree and also leave a reasonable doubt as to some particular element included in the higher degree but not the lower ...." *State v. Bergenthal,* 47 Wis. 2d 668, 675, 178 N.W.2d 16 (1970) (quoting *Zenou v. State,* 4 Wis. 2d 655, 688, 91 N.W.2d 208 (1958)), *cert. denied* 402 U.S. 972 (1971). However, if in the present case the jury was correctly instructed, as the state now concedes, as to perfect self-defense, an independent analysis of the propriety of an imperfect self-defense as a lesser-included offense is not required since under *Ross v. State,* 61 Wis. 2d 160, 211 N.W.2d 827 (1973), it is inconsistent and reversible error to deny the imperfect self-defense instruction where an instruction is given as to perfect self-defense. The privilege of self-defense under sec. 939.48(1), Stats.,[4] is the "right to use force against another to prevent what the actor

---

[4]**"939.48 Self-defense and defense of others. (1)** A person is privileged to threaten or intentionally use force against another for the purpose of preventing or terminating what he reasonably believes to be an unlawful interference with his person by such other person. The actor may intentionally use only such force or threat thereof as he reasonably believes is necessary to prevent or terminate the interference. He may not intentionally use force which is intended or likely to cause death or great bodily harm unless he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself."

reasonably believes to be an unlawful interference with his person." *Ross,* 61 Wis. 2d at 166. To be within the scope of the absolute privilege of sec. 939.48, however, both the actor's belief and the amount of force used must be reasonable. Manslaughter, under sec. 940.05(2),[5] operates where the actor actually believed the force used was necessary for self-defense but the belief or amount of force used was unreasonable. *Id.* at 166–68; *Roe v. State,* 95 Wis. 2d 226, 243–44, 290 N.W.2d 291 (1980). Thus, and as noted in *Ross,* since a self-defense instruction inherently requires examination of "reasonableness," it is inconsistent and improper to deny a manslaughter self-defense instruction where the jury is properly, as the state concedes, instructed as to the privilege of complete self-defense.

Additionally, and for the same reasons articulated in *Ross* and discussed above, the state correctly conceded at the outset as its position before this court that *Sarabia* applies with equal force where, as here, the defendant claims not only imperfect self-defense as in *Sarabia,* but both perfect and imperfect self-defense. In view of the fact that *Ross* held that perfect self-defense and imperfect self-defense differ only in regard to the factual determination of "reasonableness," the distinction between perfect and imperfect self-defense addressed in the certified issue will not support the limitation of the application of *Sarabia* to

---

[5]"**940.05 Manslaughter.** Whoever causes the death of another human being under any of the following circumstances is guilty of a Class C felony:

"...

"(2) Unnecessarily, in the exercise of his privilege of self-defense or defense of others or the privilege to prevent or terminate the commission of a felony; ..."

situations where only imperfect self-defense is claimed.

Furthermore, since *Sarabia* is entirely consistent with *Johnnies* and its progeny, it is not necessary to distinguish *Sarabia* from these earlier holdings; *Sarabia* merely stands for the proposition that although a claim that the defendant did not intentionally commit an act forming the basis of a charge is inconsistent with a lesser offense such as manslaughter-self-defense which is predicated upon an intentional act, a defendant may nevertheless be entitled to a self-defense instruction where a reasonable view of that portion of the defendant's testimony which is not exculpatory and other witnesses' testimony would support the lesser-included offense. In fact, the continued vitality of *Johnnies* was implicitly urged by the court's acknowledgement in *Sarabia* that "defendant's exculpatory testimony does not in itself support the giving of *any* lesser included offense instruction." *Sarabia,* 118 Wis. 2d at 663–64 (footnote omitted) (emphasis in original).

Contrary to both *Sarabia* and the *Johnnies* line of cases, this case presents a situation in which the defendant admitted that she intentionally threatened the use of self-defense, did not deny that Coffey died as a result of a stab wound from the knife that she wielded, but claimed that she did not intentionally thrust the knife into the deceased. To distinguish the intentional conduct of threatening use of force from the ultimate unintentional act resulting from the actions taken in self-defense such as to create an inconsistency would be to impose a fictional distinction upon what was essentially one continuous act. *State v. Giwosky,* 109 Wis. 2d 446, 326 N.W.2d 232 (1982). More closely aligned to the present case is the

311

court's discussion in *State v. Baldwin,* 101 Wis. 2d 441, 304 N.W.2d 742 (1981), rejecting an argument that the "use" of force and the "threat" of force are conceptually distinguishable. In part relevant to this issue, this court in *Baldwin* stated:

> "[I]t is not difficult to imagine situations where the line between 'threat' and 'use' blurs, even where a jury may be in agreement as to precisely what a defendant did. The proper application of the *Gipson* rationale is not dependent upon the conceptual dissimilarity, but rather the conceptual similarity of the conduct. In *Holland* we said '[t]he *Gipson* logic requires the jury to agree on the factual theory or "concept" underlying criminal liability but does not require it to split hairs over nomenclature.'" 91 Wis. 2d at 139. 101 Wis. 2d at 450.[6]

---

[6]Similarly, in *Manson v. State,* 101 Wis. 2d 413, 427, 304 N.W.2d 729 (1981), this court addressed the distinction between the threat and the use of force and concluded: "Because use of force and the threat of imminent use of force are means to the same end and are accomplished by a similar mechanism—behavior which evidences force—we conclude that these proscribed acts are similar." More recently, the principle that separate acts, while different, may be conceptually similar was reaffirmed in *State v. D'Acquisto,* 124 Wis. 2d 758, 370 N.W.2d 781 (1985), in which separate acts of kicking and hitting were held to constitute one "continuous course of unlawful conduct." 124 Wis. 2d at 767. *See also State v. Lomagro,* 113 Wis. 2d 582, 335 N.W.2d 583 (1983). While the issue of separate acts arose in *D'Acquisto, Giwosky, Lomagro, Manson,* and *Baldwin* with respect to questions of jury unanimity requirements, to the extent that conduct is not so conceptually dissimilar as to require a unanimous verdict as to each component act, the distinction should not be applied to deny a jury instruction where both component acts are not present.

Just as the court in *Baldwin* concluded that the phrase "use or threat of force" captured the "essence" of "proscribed conduct" and comprised a single element of an offense, the language of sec. 939.48, Stats., providing that a person is privileged "to threaten or intentionally use force against another," collectively embraces acts of self-defense. Moreover, this court has not recognized a conceptual distinction between the threat and use of force under sec. 939.48. For example, in *Roe,* we stated that an individual may be "exercising self-defense or the imperfect right of self-defense" whether the individual either "intends to use force *or* threaten force against another for the purpose of self-defense." 95 Wis. 2d at 245 (emphasis added) (citing *Johnnies,* 76 Wis. 2d at 584). As such, the court accepts the state's concession that the inconsistencies addressed in *Johnnies* and *Sarabia* are not present herein, since the defendant asserted that although she did not intentionally stab or kill Coffey, his wounds and death were the direct result of her alleged actions taken while intentionally threatening the use of deadly force. The defendant's actions, from the moment that she intentionally wielded and threatened the use of the knife, to the next instant, when she claimed that Coffey overtook her intentions by forcing himself upon her, describe one continuing act of self-defense. Thus, since there exists no inconsistency in the defendant's description of the stabbing incident and her request for the self-defense instructions, viewing the facts most favorably to the defendant does not, as was required in *Sarabia,* necessitate allowance for the fact that the jury could disbelieve the defendant.[7] Therefore, a *Sarabia* analysis need not and will

---

[7]Other jurisdictions have similarly held that assertions of self-

not be invoked. The court will now discuss whether the objection to the trial court's failure to instruct the jury as to imperfect self-defense was waived or withdrawn.

## III.

There is no dispute that the defendant submitted a written request for an imperfect self-defense jury instruction. Rather, the question presented herein is whether the request for the instruction was withdrawn or, alternatively, if not withdrawn, whether the defense counsel properly preserved the objection when the trial judge decided to omit the imperfect self-defense instruction.

In support of the withdrawal argument, the state quotes one passage from the jury instructions conference in which the defense counsel stated:

"I'm asking for the heat of passion. As a point of clarification, I think it's clear to us, but these things are scrutinized if there is a guilty verdict.

"I'm not asking for the subsection two of 940.05 [imperfect self-defense] as the defense but rather

---

defense and accident are not always inconsistent, such as to require rejection of one in order to accept the other. *See, e.g., State v. Adams,* 2 N.C. App. 282, 288, 163 S.E.2d 1, 5 (1968) (pleas of accident and self-defense are not inconsistent where defendant pointed loaded gun to protect his mother from serious bodily harm but claimed that shooting was accidental and that he did not know what caused the gun to discharge). *See also Southard v. State,* 422 N.E.2d 325, 330 (Ind. Ct. App. 1981) ("The theories of self-defense and accidental homicide are not inconsistent as a matter of law and may be raised simultaneously. ... Thus self-defense is available to an accused who accidentally kills his assailant while asserting reasonable force to repel the assailant.") (citation omitted).

subsection one of Section 940.05 [heat of passion] of the Wisconsin Statutes as the applicable case law here."

While that portion of the above statement in which the defense counsel stated that he was "not asking for the subsection two of 940.05" would, if viewed separately, indicate a withdrawal of the request for imperfect self-defense, such an interpretation would improvidently remove the statement from the context in which it was made. In this regard, it must be noted that this statement was expressly made in an apparent attempt at clarification. Furthermore, the record indicates that the defense counsel, at that same instructions conference, later redirected the court's attention to its written request, stating, "We had a request here, Judge, this number four, 1141 [imperfect self-defense]."[8] A careful review of the entire record

---

[8]Wisconsin Jury Instruction—Criminal 1141 reads in part as follows:

> "As applied to this case, the effect of the law of self-defense is that if the defendant caused the death of (name of victim) with the intent to kill and did not actually believe the force used was necessary in self-defense, the defendant is guilty of first degree murder.
>
> "If the defendant caused the death of (name of victim) with the intent to kill and actually believed the force used was necessary in self-defense, but the belief or the amount of force used was unreasonable, the defendant is guilty of manslaughter.
>
> "If the defendant reasonably believed the force used was necessary in self-defense, the defendant is not guilty of either first degree murder or manslaughter.
>
> * * *
>
> "If you are satisfied beyond a reasonable doubt that the defendant did cause the death of (name of victim) with the intent to kill and did not reasonably believe the force used was necessary

indicates that the initial request for the 1141 instruction was not withdrawn. As such, the present case differs from the situation addressed in *Moes v. State,* 91 Wis. 2d 756, 770, 284 N.W.2d 66 (1979), where after an initial denial of an instruction, the trial judge asked if there were an instruction that they wanted "to spread across the record," and counsel responded in the negative; rather, the defense counsel herein expressly requested the imperfect self-defense instruction after the above-quoted clarification. Specifically, when the judge was summarizing the instructions he had decided upon during the conference and omitted 1141 from the instructions, defense counsel restated his request in order to "tie it over." However, even if the defense counsel did not affirmatively withdraw the instruction, there remains the question of whether the objection to instructions omitting the proposed manslaughter instruction was adequately preserved under sec. 805.13, Stats.

## IV.

The application of sec. 805.13, Stats., to criminal trials is directed by sec. 972.11(1).[9] In fact, this court has previously had occasion to apply sec. 805.13 to criminal proceedings. *See, e.g., State v. Shah,* 134 Wis. 2d 246, 251–52, 397 N.W.2d 492 (1986); *State v. Zelenka,* 130 Wis. 2d 34, 43–44, 387 N.W.2d 55 (1986).

in self-defense, you should find the defendant guilty of manslaughter."

[9] Section 972.11(1) provides in relevant part as follows: "Except as provided in subs. (2) to (4), the rules of evidence and practice in civil actions shall be applicable in all criminal proceedings unless the context of a section or rule manifestly requires a different construction...."

Although not addressed by either party, sec. 805.13 is directly applicable and provides, in part, as follows:

> (3) *Instruction and verdict conference.* At the close of the evidence and before arguments to the jury, the court shall conduct a conference with counsel outside the presence of the jury. At the conference, or at such earlier time as the court reasonably directs, counsel may file written motions that the court instruct the jury on the law, and submit verdict questions, as set forth in the motions. The court shall inform counsel on the record of its proposed action on the motions and of the instructions and verdict it proposes to submit. *Counsel may object to the proposed instructions or verdict on the grounds of incompleteness or other error, stating the grounds for objection with particularity on the record. Failure to object at the conference constitutes a waiver of any error in the proposed instructions or verdict.* (Emphasis added.)

Section 805.13 explicitly provides that a failure to object will result in a waiver of the objection. The record indicates that an "objection" was made when it became apparent to defense counsel that this instruction had been omitted. At that point, defense counsel redirected the court's attention to its request for an imperfect self-defense instruction. However, the more precise question is whether defense counsel adequately stated "grounds for objection with particularity" when he objected during the following discussion at the jury instructions conference:

> "MR. ROSE: We had a request here, Judge, this number four, 1141.
> "THE COURT: Okay. Under *Day v. State,* under the facts of this case, based on the testimony, although they could find heat of passion

maybe, the 805 self-defense, there is no basis whatsoever based on this testimony—

"MR. ROSE: Okay.

"THE COURT: — for it to be conditioned what's commonly referred to as an imperfect, and the Court doesn't believe that would be applicable.

"MR. ROSE: I just wanted to go through these here to tie it over."

While the precise scope of the requirement that grounds be stated with particularity has not previously been delineated, in *Air Wisconsin, Inc. v. North Central Airlines, Inc.,* 98 Wis. 2d 301, 311, 296 N.W.2d 749 (1980), this court described the purpose of the rule as follows:

> "[T]o afford the opposing party and the trial court an opportunity to correct the error and to afford appellate review of the grounds for the objection. This court has stated that, in the absence of a specific objection which brings into focus the nature of the alleged error, a party has not preserved its objections for review."

The court thus applied sec. 805.13 and found that although defense counsel had objected to an instruction, he had waived the objection to the jury instruction since he failed to adequately state the grounds for the objection. While generally instructive, *Air Wisconsin* is distinguishable for several significant reasons.

In *Air Wisconsin,* after the defense counsel generally objected to an instruction regarding forfeiture of the right of way, the court requested "some authority to the contrary ...," 98 Wis. 2d at 307, which the defense counsel was unable to supply. Referring to this colloquy, this court stated:

318

"Counsel realized that he had to state his objection on the record and did so. Counsel did not, however, specify the grounds of the objection on the record, although the trial court's request for citations could arguably be interpreted as an invitation or an opportunity to do so." *Id.* at 312.

While supporting an objection with legal authority would satisfy the requirement of grounds being stated with particularity, this statement does not suggest that legal authority must be supplied in order to preserve an objection under sec. 805.13.[10] A distinction must be made between a general objection to the inclusion of a jury instruction such as was the case in *Air Wisconsin* and the circumstances present in this case. Specifically, the defendant in *Air Wisconsin* merely voiced a general objection to an instruction; the defense counsel in the case at bar expressed opposition to the jury instructions and stated the grounds for the objection by redirecting the court's attention to his proposed instruction for imperfect self-defense.

In *Bethards v. State,* 45 Wis. 2d 606, 173 N.W.2d 634 (1970), in a case predating the adoption of sec. 805.13, but employing a similar requirement for the

---

[10]While no legal argument was presented with respect to the imperfect self-defense instruction, argument was made regarding the privilege of perfect self-defense. Thus, arguably, under *Ross,* even if sec. 805.13 did require legal argument, counsel in the case at bar adequately presented his objection. Specifically, since in *Ross* we found a distinction to exist between the privilege of perfect self-defense and imperfect self-defense only with respect to the issue of reasonableness, separate legal argument as to both perfect and imperfect self-defense would be superfluous.

preservation of objection[11] consistent with that ultimately adopted under sec. 805.13, this distinction was made apparent. Specifically, the court stated that an objection to the inclusion of an instruction on a party to a crime was not adequate where counsel responded, when asked for the reasons for his objection, that "'I don't think the evidence shows anything where the defendant would have been a party to the crime. Either he was a party or he wasn't.'" *Id.* at 616. Rather, the court quoted an earlier decision that held:

> "The objection ... was completely inadequate ... it was impossible to determine in what respect

---

[11]While we stated in *Shah,* 134 Wis. 2d at 251–52 n. 4, that sec. 805.13 abolished the distinction between an instruction misstating the law from one merely incomplete or imperfect, this holding must be read with due regard to principles of statutory construction providing that statutes are not to be read in derogation of the common law, unless intent to change common law is clearly expressed. *See, e.g., State ex rel. Schwenker v. District Court,* 206 Wis. 600, 604, 240 N.W. 406 (1932); *Leahy v. Kenosha Memorial Hospital,* 118 Wis. 2d 441, 449, 348 N.W.2d 607 (Ct. App. 1984) (citing *Wisconsin Bridge & Iron Co. v. Industrial Commission,* 233 Wis. 467, 474, 290 N.W. 199 (1940)). Thus, case law existing under former sec. 270.21, Stats. (1973), should only be considered as having been abrogated insofar as the intent to change this law is clearly expressed. *Cf. State v. Hackbarth,* 228 Wis. 108, 279 N.W. 687 (1938). Furthermore, to the extent that sec. 805.13 revised sec. 270.21 (1973), the presumption that we adopted the construction given sec. 270.21, under which an objection was preserved by offering a precise instruction as an addition or modification to a proposed instruction, is buttressed by the adoption in sec. 805.13 of language similar to that employed prior to the passage of sec. 805.13 regarding "particularity." *See Air Wisconsin,* 98 Wis. 2d at 311 (cases predating the adoption of sec. 805.13 cited as consistent with the purpose of the waiver provisions of sec. 805.13).

any instruction was being challenged. *The objection should be specific—it should not only identify the particular instruction or instructions objected to, but should also state what counsel contends is the proper instruction." Id.* (emphasis added) (quoting *State v. Halverson,* 32 Wis. 2d 503, 511, 145 N.W.2d 739 (1966)).

This distinction set forth in *Bethards* between the inadequacy of a general objection and an objection supported by the submission of an alternative or additional instruction which properly preserves an objection reflects the purpose of sec. 805.13 and applies with equal vitality under the statutory requirement.[12] In this regard, we agree with the following statement of the court of appeals in *Leahy v. Kenosha Memorial Hospital,* 118 Wis. 2d 441, 447, 348 N.W.2d 607 (Ct. App. 1984), interpreting sec. 805.13(3): "We should not interpret the language of the objection in a vacuum. It must be considered in conjunction with the proffered instructions."

Likewise, the court's decision in *In Interest of C.E.W.,* 124 Wis. 2d 47, 368 N.W.2d 47 (1985), is not determinative of the present matter. In *C.E.W.,* this court stated that a party could not rely upon the

---

[12]*See also Kobelinski v. Milwaukee & Suburban Transport Corporation,* 56 Wis. 2d 504, 517–18, 202 N.W.2d 415 (1972). In *Kobelinski,* the court addressed the issue of whether a motion after verdict stated with the requisite degree of "particularity" an alleged error in omitting certain requested jury instructions. The motion was not found to have been stated with requisite particularity because counsel failed to specify which of the requested instructions was erroneously omitted. Again, in *Kobelinski,* there was no language in the court's decision to suggest a need to support an objection with legal argument.

submission of alternate correct instructions to preserve objection for appeal:

> "A party's mere submission of alternate instructions without a particularized objection on the record to the instructions proposed by the court cannot provide a basis for raising the erroneous instruction on appeal as a matter of right. A party's submission of proposed instructions has the effect of notifying the circuit court of an objection to the instructions, but a submission does not explain the basis for the objection and does not aid the circuit court in correcting the instruction if necessary." 124 Wis. 2d at 54.

Certainly it should be beyond question that the submission of alternate instructions will not alone satisfy the requirements of sec. 805.13. However, such was not the case in the present matter. Alternate instructions were submitted, and, when the trial judge failed to include the requested instruction on imperfect self-defense, counsel raised objection. Again, the grounds for the objection were stated with the requisite degree of particularity when counsel articulated as the basis of his objection the omission of a particular instruction.[13]

---

[13]"It is not unusual to include in statutes or rules on jury instructions some provision on waiver. Generally, the position is that a defendant may not complain on appeal about instructions unless defense counsel took sufficient action at trial, either by tender of instructions or by objection to proposed instructions, to apprise the trial judge of the defense counsel's view as to what the instructions should be." Standards for Criminal Justice sec. 15–3.6(d), commentary at 107 (1979). It should be noted that the federal rule relating to the preservation of objections to jury instructions is, on its face, comparatively more demanding to the extent that it requires that the objector both "stat[e] distinctly the

The statutory requirement that grounds for an objection be stated with particularity must not be read so broadly as to impede the operation of the instructions conference. In this regard, it should be noted that the underlying purpose of requiring a specific objection at the instructions conference is to promote judicial economy by providing the trial court the opportunity to address objections and correct errors in the first instance. *State v. Olsen,* 99 Wis. 2d 572, 581 n. 7, 299 N.W.2d 632 (Ct. App. 1980) (citing *Air Wisconsin,* 98 Wis. 2d at 311). If due regard is given to the purpose of sec. 805.13, it is apparent that the requisite degree of particularity cannot be interpreted to require that objections be accompanied by legal argument; such a burdensome requirement would thwart the very purpose of judicial economy which the statute was designed to promote.[14]

---

matter to which he objects and the grounds of his objection." Fed. R. Crim. P. 30. *See, e.g., United States v. Green,* 779 F.2d 1313, 1320 n. 6 (7th Cir. 1985); *United States v. Kuecker,* 740 F.2d 496, 503 (7th Cir. 1984). However, in Washington, which has, in relevant part, adopted in its civil rules the more stringent language of the federal rule, the court nevertheless held that, "The pertinent inquiry on review is whether the exception was sufficient to apprise the trial judge of the nature and substance of the objection. ... Although we believe the far better procedure is to cite the authority and then explain why the instruction is necessary, we are unable to share the court of appeals' view that failure to give a rationale *necessarily* precludes appellate review." *Crossen v. Skagit County,* 100 Wash. 2d 355, 358–59, 669 P.2d 1244, 1246–47 (1983) (emphasis in original).

[14]Moreover, even if we were to have found that the defense counsel had waived the right to object to the jury instructions, this court would not be precluded from review of the instructions since the challenged instructions go "to the integrity of the fact-finding process." *Shah,* 134 Wis. 2d at 254. *See also State v. Baldwin,* 101 Wis. 2d 441, 446, 304 N.W.2d 742 (1981); *Brown v. State,* 59 Wis. 2d

 The court has thus found that the defense counsel properly preserved the objection for review by objecting and redirecting the court's attention to the proposed imperfect self-defense instruction. The defense counsel specifically "focused" the basis of the objection such that the opportunity was presented to "the opposing party and the trial court ... to correct the error and to afford appellate review of the grounds for the objection." *Air Wisconsin,* 98 Wis. 2d at 311. Additionally, the court has concluded that the state correctly conceded that it was error to refuse the defense counsel's request for an instruction on imperfect self-defense. Since the trial court's refusal to instruct the jury as to imperfect self-defense concerned a crucial aspect of the defendant's defense, the error was not harmless but an error "'for which prejudice to the defendant (was) undeniable,'" requiring a reversal of the defendant's conviction and a new trial. *State v. Mendoza,* 80 Wis. 2d 122, 155–56, 258 N.W.2d 260 (1977) (quoting *State v. Stortecky,* 273 Wis. 362, 369, 77 N.W.2d 721 (1956)), *appeal dismissed* 96 Wis. 2d 106, 291 N.W.2d 478 (1980). *See also State v. Dyess,* 124 Wis. 2d 525, 546–47, 370 N.W.2d 222 (1985).

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded for a new trial consistent with this opinion.

---

200, 213, 207 N.W.2d 602 (1973). To the extent that the omission of the imperfect self-defense instruction was an error of law which affected the substantial rights of the defendant, grounds exist for discretionary review even if the objection had been waived.