MURAWSKI, Plaintiff and Respondent, v. BROWN and another, Defendants and Respondents: CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY, Defendant and Appellant.

*No. 55.   Argued May 3, 1971.—Decided June 2, 1971.*
(Also reported in 187 N. W. 2d 194.)

For the defendant-appellant there were briefs by *Godfrey, Trump & Davidson,* attorneys, and *Rodger S. Trump* of counsel, all of Milwaukee, and oral argument by *Rodger S. Trump.*

For the plaintiff-respondent there was a brief and oral argument by *Jerome A. Maeder* of Wausau.

HANLEY, J.   Two issues are presented on this appeal:

(1)  Did the trial court err in failing to grant appellant's motion for a directed verdict; and

(2)  Are the damages excessive?

*Question of directed verdict.*

A verdict should only be directed against a plaintiff where plaintiff's evidence, giving it the most favorable construction it will reasonably bear, is insufficient to sustain a verdict in plaintiff's favor. *Wallow v. Zupan* (1967), 35 Wis. 2d 195, 150 N. W. 2d 329; *Baumgarten v. Jones* (1963), 21 Wis. 2d 467, 124 N. W. 2d 609.

The central issue in this case is whether or not the railroad had a duty to warn motorists of the presence of a train. The defendant railroad contends that it is unreasonable to require the railroad to flag the crossing because "the train itself" furnishes adequate warning of its presence on the crossing. For this proposition the railroad relies heavily on *Hendley v. Chicago & N. W. Ry. Co.* (1929), 198 Wis. 569, 572, 225 N. W. 205. In *Hendley,* the plaintiff was a passenger in an automobile which struck a standing train. The railroad demurred to the complaint, and this court sustained the demurrer on the ground that there is no *common-law* duty to warn travelers of the presence "of such a conspicuous object as a standing freight train." The court, in *Hendley,* went on to note, however, that:

". . . although it may well be that the mere absence of a specific statutory provision requiring flagmen *is not of itself sufficient as a matter of law, to relieve a railroad from giving warning in appropriate situations. . . ."* (Emphasis supplied.)

Appellant also cites *Schmidt v. Chicago & N. W. Ry. Co.* (1926), 191 Wis. 184, 210 N. W. 370. In *Hendley, supra,* there were no signals of any kind. In *Schmidt,* there were signals at the crossing, voluntarily installed by the railroad, but they failed to operate just prior to the accident. In *Schmidt,* the court held that the failure to keep the signals working properly did not render the railroad liable because the plaintiff ran into a train which

was already upon the crossing. The court found that the purpose of the signals was to warn of the approach of a train, not its actual presence. The factual situation in the instant case differs substantially from the facts in both the *Hendley Case* and *Schmidt Case*. In *Hendley*, there was no Wisconsin public service commission order requiring the installation of warning devices. In *Schmidt*, there was no evidence that the plaintiff was familiar with the crossing and that he relied upon the absence of a warning signal. In the instant case, it was uncontradicted that this plaintiff had traversed this crossing, often twice a day, since 1959 when he first learned to drive. The signals at this crossing had been operating from 1957, and over a period of eight years the plaintiff had come to place some reliance on the presence of the signals. Here there is the additional fact that a signal repairman for the defendant testified that some type of temporary warning signal could have been installed at this crossing while the signal control box was being repaired, but this was not done because the railroad had issued instructions to the train crews of all trains using the crossing that they were to stop and flag over the crossing.

The defendant railroad points out that sec. 192.29 (3) (a) and (4), Stats., require it to sound a warning bell only "until such crossing shall be reached." The railroad contends that these provisions constitute legislative recognition of the fact that it is unreasonable to require the railroad to warn motorists of the presence of a train as opposed to the approach of a train. We do not believe these statutes were intended to relieve the railroad of the duty to warn highway travelers in appropriate situations.

We think the crucial fact in this case is that the public service commission has, by the authority granted to it under sec. 195.28, Stats., imposed a duty on the railroad to erect and maintain at this crossing an electric warn-

ing system of flashing lights and ringing bells. The commission's order does not specify that the warning system must continue to operate as the train passes over the crossing, but that is the type of system the railroad erected at this crossing. Therefore, even if it was not so ordered, the railroad has nevertheless imposed upon itself the duty of warning motorists of not only the approach of trains, *but also the presence of trains on the crossing*. The railroad recognized this duty when it issued the order to the train crew directing them to flag over the crossing.

It is a common and well-established principle of tort law that by undertaking to do an act which the law might not otherwise require, one can impose upon himself a duty to do or continue the act properly because others have learned to rely on his conduct. Two examples of the operation of this rule are found in Prosser, *Law of Torts* (3d ed. hornbook series), p. 342, sec. 54.[1] The latter example is rather pertinent to the instant case:

"Where performance clearly has been begun, there is no doubt that there is a duty of care. Thus a landlord who makes repairs on leased premises, although he is under no obligation to do so, assumes a duty to his tenant and to those entering in the right of the tenant, to exercise proper care to see that the repairs are safe, or at least that the tenant is not left in ignorance of his danger. *The same principle frequently has been applied in the very common case where a railway company has made a practice of maintaining a flagman or giving warning signals at a crossing, and when it fails to do so on a particular occasion, is held liable to a traveler who has relied on the absence of warning. . . ."* (Emphasis supplied.)

The propriety of this rule was recognized in Wisconsin as early as *Gundlach v. Chicago & N. W. Ry. Co.* (1920), 172 Wis. 438, 179 N. W. 577, 179 N. W. 985. In that

---

[1] *See also:* 44 Am. Jur., *Railroads*, p. 740, sec. 501; and Annot. 84 A. L. R. 2d 813, and cases cited therein.

case the railroad flagman was absent, and the plaintiff approached the crossing with a team of horses. He, like the plaintiff in this case, was familiar with the crossing and relied upon the presence of the flagman. This court stated as follows, at page 444:

". . . It is a matter of common knowledge and experience that travelers approaching a railway crossing at a time when gates or flagmen are ordinarily or usually maintained, take into consideration that fact in determining their course of conduct, and it is for the jury to determine whether or not, in a particular case, a traveler has given that circumstance such weight and consideration as the great mass of mankind ordinarily do under such circumstances, . . ."

Of course, one must always exercise reasonable caution for his own safety, and the fact that a flagman or warning system is usually operative at a crossing does not automatically relieve the plaintiff of that duty. The rule in *Gundlach, supra,* was reaffirmed in *Wasikowski v. Chicago & N. W. Ry. Co.* (1951), 259 Wis. 522, 525, 49 N. W. 2d 481, where this court restated all of the pertinent considerations related to this type of a fact situation and affirmed judgment for the plaintiff. In that case the plaintiff was familiar with the crossing for many years and knew a flagman was on duty when a train was about to cross over the crossing. At that time of the night the flagman was not present, and the plaintiff collided with the train. The court quoted the language from the *Gundlach Case, supra,* and specifically analyzed the conduct of the plaintiff and found that the question of negligence was for the jury.

The next case is the case of *McLaughlin v. Chicago, M., St. P. & P. R. R. Co.* (1966), 31 Wis. 2d 378, 143 N. W. 2d 32. In *McLaughlin,* the plaintiff ran into a flatcar with a crane mounted on it. The crossing was on a highway, not a city street, and it was not governed by any kind of signal at all and never had been. In spite of this, an apportionment of negligence—65 percent to

the railroad and 35 percent to the plaintiff—was affirmed on appeal. In *McLaughlin,* at page 386, this court noted:

"The learned circuit judge deemed that it was negligence for the crew to leave the crossing blocked, without warning signals, *in order to go and have their supper.* Under the evidence the collision may have happened before the crew actually left the engines to walk to the restaurant. But regardless of when, during this interval, it happened, the critical question is whether the leaving of the cars on the crossing, at night, under existing conditions of visibility, without a warning signal, involved an unreasonable risk of harm to people traveling on the highway." (Emphasis supplied.)

Of course, the crew in the instant case did not abandon the train and leave it on the crossing. But the reason there was no warning flagman in this case is the same as it was in *McLaughlin.* The crew was too preoccupied with plans for supper. The crew admitted it stayed with the engine (and, therefore, one did not stay at the crossing and signal the crossing for traffic) because it was closer to the restaurant for the crew. Moreover, plaintiff has in this case a fact not present in *McLaughlin,* namely, a past history of signal warnings at the crossing which he had to some extent come to rely on. Consequently, since this court found that the facts in *McLaughlin* presented a jury question, we must in all consistency find that the facts of the instant case presented a jury question.

We conclude that since a jury question was presented, the trial court was correct in denying the railroad's motion for a directed verdict, both at the time it was initially made (at the close of the evidence) and at the time it was revived (on motions after verdict).

*The claim of excessive damages.*

The jury awarded $30,000 to Mr. Murawski for personal injuries; and the defendant railroad contends that

such sum is excessive. Since the trial court has filed a memorandum opinion on this issue, a review *ab initio* is unnecessary. This court will review the evidence on this aspect of the appeal only to the extent necessary to determine whether the trial court abused its discretion in approving the jury award.[2]

In this case the trial court's memorandum points out the facts which support this award. The trial court noted the following evidence:

"While an award of $30,000 for the personal injuries of the plaintiff may be high, the court believes that they are not excessive and there is no indication that they are the result of passion or prejudice by the jury. The plaintiff, age 26, as a result of this accident, received a fracture to the jaw in two places, loss of three teeth, multiple lacerations and abrasions to the face and body, fractures of the left humerus and left ulna and damage to the radial nerve. The radial nerve that was damaged was in the fracture site of the left humerus and an open reduction was performed and a metal plate was placed at this fracture site thus taking the nerve away from the point of the fracture. This resulted in a temporary paralysis of the left arm with loss of sensory and motor activity and Dr. Dietsch, the orthopedic surgeon, testified that there will be some permanent loss of sensory function near the thumb of the left hand and there will be some weakness in the left arm as a result of these injuries. The plaintiff was away from his employment at Consolidated Papers, Inc., as a result of the injuries, from October 10, 1967 to March 4, 1968 and the jury award for damages included a wage loss of $2,669. . . ."

Defendant railroad concedes that all personal injury cases must be different, but submits that the instant case is very similar to the case of *Davis v. Geib* (1966), 32 Wis. 2d 14, 145 N. W. 2d 192. In *Davis,* the plaintiff sustained personal injuries as serious and comparable to those sustained by the plaintiff Murawski in the instant

[2] *Gervais v. Kostin* (1970), 48 Wis. 2d 190, 201, 179 N. W. 2d 828.

case. Defendant railroad contends that *Davis* held that an award of $25,000 to such a man was excessive and that $15,000 was a reasonable sum for pain and suffering and disability. The final contention is that if the award was excessive in *Davis*, it clearly would have to be excessive in the present case. We do not agree with the conclusion reached because, in the *Davis Case*, this court did not hold, as appellant claims, that the damages of $25,000 were excessive but specifically concluded that there was no abuse of discretion by the trial court in reducing the sum awarded. Even if *Davis* were not distinguishable on the above basis, it would still not be persuasive authority for a reduction of damages in this case. This is so because as we noted in *Springen v. Ager Plumbing & Heating, Inc.* (1963), 19 Wis. 2d 487, 493, 120 N. W. 2d 692, comparison of verdicts on appeal with verdicts previously approved or disapproved by this court is of little persuasive value due to the huge number of variables involved in any given damage award.

We agree with the conclusion reached by the trial judge that the damages awarded to Mr. Murawski, who was twenty-six years of age at the time of the accident, were not excessive.

*By the Court.*—Judgment affirmed.